# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

TIFFANY ELLIS, STEPHEN TYSON, GAIL BRALEY, DAVID LYALL, LINDA KEMP, SYLVESTER TIBBITS, LUCAS CRANOR, MARY CRAWFORD, IRENE STAGER, NATASHA FORD, and GARRY WILLIT, on behalf of themselves and all others similarly situated,

        Plaintiffs,

    v.

General Motors, LLC,

        Defendant.

Case No.: 2:16-cv-11747-GCS-APP

**FIRST AMENDED CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Tiffany Ellis, Stephen Tyson, Gail Braley, David Lyall, Linda Kemp, Sylvester Tibbits, Lucas Cranor, Mary Crawford, Irene Stager, Natasha Ford, and Garry Willit and (collectively, "Plaintiffs") bring this action against Defendant General Motors, LLC ("Defendant" or "GM"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

## I. <u>INTRODUCTION</u>

1.     This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former owners and lessees of 2016 Chevrolet Traverses, 2016 Buick Enclaves, and 2016 GMC Acadias (collectively, the "Class Vehicles") that were marketed and sold with false fuel-economy ratings.[1]

2.     This action arises from the pervasive false advertisements disseminated by Defendant that overstate expected gas mileage of the Class Vehicles.

3.     Prior to May 13, 2016, Defendant advertised that the Class Vehicles were EPA-rated at 17 miles per gallon ("mpg") in city driving and 24 mpg on the highway, resulting in a combined rating of 19 mpg.

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

4.     These ratings, however, were false.  As detailed in a memorandum circulated by GM to its authorized dealerships, the Class Vehicles are actually EPA-rated at 15 mpg in city driving and 22 mpg on the highway, resulting in a combined rating of 17 mpg.

5.     Not only did Defendant actively conceal the fact that the fuel-economy ratings on the Class Vehicles were false, it did not reveal that the restated and allegedly true fuel-economy would diminish the intrinsic and resale value of the Class Vehicles.

6.     GM knew or should have known that the Class Vehicles were being advertised and sold with false and misleading fuel-economy ratings.   Yet, notwithstanding its knowledge, GM has failed to adequately compensate owners and lessees who purchased the Class Vehicles on or before May 13, 2016.

7.     As a result of Defendant's unfair, deceptive and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value.  The unfair and deceptive trade practices committed by Defendant were conducted in a manner giving rise to substantial aggravating circumstances.

8.     Had Plaintiffs and other Class members known the true fuel-economy ratings of the Class Vehicles at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid substantially less for them.

9.     As a result of the lower gas mileage ratings and the monetary costs associated therewith, Plaintiffs and the Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by GM's conduct.

10.     Accordingly, Plaintiffs bring this action to redress GM's violations of the consumer protection statutes of Michigan, Florida, South Carolina, California, Washington, Missouri, Oregon, Virginia, Illinois, and Ohio and also seek recovery for GM's common law fraud, negligent misrepresentation, and unjust enrichment.

## II.     JURISDICTION AND VENUE

11.     This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000 and Plaintiffs and other putative class members are citizens of a different state than Defendant.

12.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs are all United States citizens and submit to the Court's jurisdiction.  This Court has personal jurisdiction over Defendant General Motors, LLC, because it conducted and continues to conduct substantial business in the District; its corporate headquarters are located in the District; and because it has committed the acts and omissions complained of herein in the District, including the marketing and leasing of the Class Vehicles in this District.

13.     Venue as to Defendant is proper in this judicial district under 28 U.S.C § 1391 because Defendant sells a substantial number of automobiles in this District, has dealerships in this District, maintains its corporate headquarters within this District, and many of Defendant's acts complained of herein occurred within this District, including the marketing and leasing of the Class Vehicles to Plaintiffs and members of the putative Class in this district.

## III.   PARTIES

**A.     Plaintiffs**

14.     Plaintiff Tiffany Ellis is a staff sergeant in the United States Air Force and currently resides at Charleston Airforce Base in Charleston, South Carolina. Plaintiff entered into a contract for, and took delivery of, a 2016 Chevrolet Traverse on March 23, 2016 from Rick Hendrick's Chevrolet in Charleston, South Carolina. Plaintiff viewed and relied upon GM's advertisements regarding the fuel-economy rating of the 2016 Chevrolet Traverse, including the fuel economy data set forth in the new vehicle Monroney sticker, when deciding whether to purchase the Traverse or another vehicle.  Had GM disclosed the accurate fuel-economy rating of the 2016 Chevrolet Traverse, Plaintiff would not have purchased the Traverse or would have paid substantially less for it.

15.     Plaintiff Stephen Tyson is a resident and citizen of Tallahassee, Florida. Plaintiff entered into a contract for, and took delivery of, a 2016 Chevrolet

Traverse on December 17, 2016 from Dale Earnhardt, Jr. Chevrolet in Tallahassee, FL. Plaintiff viewed and relied upon GM's advertisements regarding the fuel-economy rating of the 2016 Chevrolet Traverse, including the fuel economy data set forth in the new vehicle Monroney sticker, when deciding whether to purchase the Traverse or another vehicle. Had GM disclosed the accurate fuel-economy rating of the 2016 Chevrolet Traverse, Plaintiff would not have purchased the Traverse or would have paid substantially less for it.

16. Plaintiff Gail Braley is a resident and citizen of Brooksville, Florida. Plaintiff entered into a contract for, and took delivery of, a 2016 Buick Enclave on December 28, 2015 from Century Buick in Tampa, Florida. Plaintiff viewed and relied upon GM's advertisements regarding the fuel-economy rating of the 2016 Buick Enclave, including the fuel economy data set forth in the new vehicle Monroney sticker, when deciding whether to purchase the Enclave or another vehicle. Had GM disclosed the accurate fuel-economy rating of the 2016 Buick Enclave, Plaintiff would not have purchased the Enclave or would have paid substantially less for it.

17. Plaintiff David Lyall is a resident and citizen of Westland, Michigan. Plaintiff entered into a contract for, and took delivery of, a 2016 Chevrolet Traverse on December 30, 2016 from Feldman Chevrolet in Livonia, Michigan. Plaintiff viewed and relied upon GM's advertisements regarding the fuel-economy

rating of the 2016 Chevrolet Traverse, including the fuel economy data set forth in the new vehicle Monroney sticker, when deciding whether to purchase the Traverse or another vehicle. Had GM disclosed the accurate fuel-economy rating of the 2016 Chevrolet Traverse, Plaintiff would not have purchased the Traverse or would have paid substantially less for it.

18.     Plaintiff Linda Kemp is a resident and citizen of Compton, California. Plaintiff entered into a contract for, and took delivery of, a 2016 Chevrolet Traverse on or about December 9, 2015 from George Chevrolet in Lakewood, California. Plaintiff viewed and relied upon GM's advertisements regarding the fuel-economy rating of the 2016 Chevrolet Traverse, including the fuel economy data set forth in the new vehicle Monroney sticker, when deciding whether to purchase the Traverse or another vehicle. Had GM disclosed the accurate fuel-economy rating of the 2016 Chevrolet Traverse, Plaintiff would not have purchased the Traverse or would have paid substantially less for it.

19.     Plaintiff Sylvester William Tibbits is a resident and citizen of Liberty Lake, Washington. Plaintiff entered into a contract for, and took delivery of, a 2016 Chevrolet Traverse on October 12, 2015 from Knudsten Chevrolet in Post Falls, Idaho. Plaintiff viewed and relied upon GM's advertisements regarding the fuel-economy rating of the 2016 Chevrolet Traverse while conducting research at his home in Washington, including the fuel economy data set forth in the new

vehicle Monroney sticker, when deciding whether to purchase the Traverse or another vehicle. Had GM disclosed the accurate fuel-economy rating of the 2016 Chevrolet Traverse, Plaintiff would not have purchased the Traverse or would have paid substantially less for it.

20.     Plaintiff Lucas Cranor is a resident and citizen of Joplin, Missouri. Plaintiff entered into a contract for, and took delivery of, a 2016 Chevrolet Traverse on December 18, 2015 from Cross Roads Chevrolet in Joplin, Missouri. Plaintiff viewed and relied upon GM's advertisements regarding the fuel-economy rating of the 2016 Chevrolet Traverse, including the fuel economy data set forth in the new vehicle Monroney sticker, when deciding whether to purchase the Traverse or another vehicle. Had GM disclosed the accurate fuel-economy rating of the 2016 Chevrolet Traverse, Plaintiff would not have purchased the Traverse or would have paid substantially less for it.

21.     Plaintiff Mary Crawford is a resident and citizen of Dallas, Oregon. Plaintiff entered into a contract for, and took delivery of, a 2016 Chevrolet Traverse on November 8, 2015 from Capital Chevrolet in Salem, Oregon. Plaintiff viewed and relied upon GM's advertisements regarding the fuel-economy rating of the 2016 Chevrolet Traverse, including the fuel economy data set forth in the new vehicle Monroney sticker, when deciding whether to purchase the Traverse or another vehicle. Had GM disclosed the accurate fuel-economy rating of the 2016

Chevrolet Traverse, Plaintiff would not have purchased the Traverse or would have paid substantially less for it

22.     Plaintiff Irene Stager is a resident and citizen of Midlothian, Virginia. Plaintiff entered into a contract for, and took delivery of, a 2016 GMC Acadia on April 27, 2016 from Rick Hendrick Chrevolet in Richmond, Virginia. Plaintiff viewed and relied upon GM's advertisements regarding the fuel-economy rating of the 2016 GMC Acadia, including the fuel economy data set forth in the new vehicle Monroney sticker, when deciding whether to purchase the Acadia or another vehicle. Had GM disclosed the accurate fuel-economy rating of the 2016 GMC Acadia, Plaintiff would not have purchased the Acadia or would have paid substantially less for it.

23.     Plaintiff Natasha Ford is a resident and citizen of Bellbrook, Ohio. Plaintiff entered into a contract for, and took delivery of, a 2016 Chevrolet Traverse on March 19, 2016 from Jeff Schmitt Chevrolet South in Miamisburg, Ohio. Plaintiff viewed and relied upon GM's advertisements regarding the fuel-economy rating of the 2016 Chevrolet Traverse, including the fuel economy data set forth in the new vehicle Monroney sticker, when deciding whether to purchase the Traverse or another vehicle. Had GM disclosed the accurate fuel-economy rating of the 2016 Chevrolet Traverse, Plaintiff would not have purchased the Traverse or would have paid substantially less for it.

24.     Plaintiff Garry Willit is a resident and citizen of Kirkland, Illinois. Plaintiff entered into a contract for, and took delivery of, a 2016 Chevrolet Traverse on March 23, 2016 from Dekalb Sycamore Chevrolet in Sycamore, Illinois. Plaintiff viewed and relied upon GM's advertisements regarding the fuel-economy rating of the 2016 Chevrolet Traverse, including the fuel economy data set forth in the new vehicle Monroney sticker, when deciding whether to purchase the Traverse or another vehicle. Had GM disclosed the accurate fuel-economy rating of the 2016 Chevrolet Traverse, Plaintiff would not have purchased the Traverse or would have paid substantially less for it.

**B.     Defendant**

25.     Defendant GM is a limited liability company organized under Delaware law with its principal office located at 300 Renaissance Center, Detroit, Michigan 48265. Defendant designs, tests, manufactures, distributes, warrants, sells, and leases various vehicles under several prominent brand names, including but not limited to Chevrolet, Buick, GMC, GM, and Pontiac in this district and throughout the United States.

## IV.   FACTUAL ALLEGATIONS

26.     Under regulations issued by the United States Environmental Protection Agency, every new car and truck or SUV up to 10,000 pounds sold in the United States must have a fuel economy label or window sticker that contains

the vehicle's miles-per-gallon ("MPG") estimates, and the EPA provides the data used on these labels. The fuel economy ratings have been given to consumers since the 1970s and are posted for the customers' benefit to help them make valid comparisons between vehicles' MPGs when shopping for a new vehicle.

27.     While the EPA conducts its own tests, it is only able to physically test and audit approximately 15% of the models on the market.  As a result, the EPA relies on automobile manufacturers to conduct their own tests – according to the EPA's guidelines – and self-report the results of those tests to the EPA.

28.     Automobile manufacturers are required by law to prominently affix a label called a "Monroney sticker" to each new vehicle sold.  The Monroney sticker must set forth, at a minimum, the vehicle's fuel economy, estimated annual fuel costs, the fuel economy range of similar vehicles, and a statement that a booklet is available at the dealership to assist in comparing the fuel economy of vehicles from all manufacturers for that model year, along with pricing and other information.

29.     Prior to May 13, 2016, GM advertised the Class Vehicles' fuel-economy was EPA-rated at 17 mpg in city driving and 24 mpg on the highway, resulting in a combined rating of 19 mpg.

30.     GM has admitted that this fuel economy data, set forth on the Monroney sticker of each of the Class Vehicles, was demonstrably false.

31.   On or about May 13, 2016, Defendant instructed its dealerships to stop selling the Class Vehicles while it scrambled to print corrected Monroney stickers that accurately state the Class Vehicles' fuel-economy ratings: 15 mpg in city driving and 22 mpg on the highway, resulting in a combined rating of 17 mpg.[2]   For those customers who have already purchased a mislabeled Class Vehicle, GM has publicly stated that it will send them notification and corrected Monroney stickers.[3]

32.   As of April 2016, GM had sold approximately 39,105 Chevrolet Traverse, 17,457 Buick Enclave, and 25,575 GMC Acadia model year 2016 vehicles with false and overstated fuel-economy ratings.[4]

33.   Plaintiffs and members of the putative Class reasonably relied on GM's material, yet false, representations that the Class Vehicles were EPA-rated at 17 mpg in city driving and 24 mpg on the highway, resulting in a combined rating of 19 mpg.

34.   A reasonable consumer would expect and rely on GM's advertisements, including the new vehicle Monroney stickers, to truthfully and accurately reflect the Class Vehicles' fuel-economy ratings.  Further, a reasonable

---

[2]   *See*   http://www.autonews.com/article/20160513/RETAIL05/160519919/gm-grounds-large-16-crossovers-with-overstated-epa-mileage-labels (last visited May 16, 2016).  *See* Exhibit 1.

[3] *See id.*

[4] *See id.*

consumer in today's market attaches material importance to the advertisements of gas mileage, as fuel efficiency is one of the most, if not the most, important considerations in making a purchase or lease decision for most consumers.

35.    GM unilaterally instituted a solicitation and reimbursement program that required putative class members to release their claims in exchange for a prepaid debit card or an extended warranty. Per the Court's order on June 30, 2016 (ECF No. 19), Plaintiffs intend to move the Court to invalidate the releases under contract law principles when Plaintiffs file their second motion for class certification after the completion of discovery.[5]

## V.    CLASS ACTION ALLEGATIONS

36.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the following class:

> **The Nationwide Class**
> All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

37.    Alternatively, Plaintiffs propose the following state-specific sub-classes:

---

[5] Plaintiffs reserve the right to amend this Complaint after the completion of discovery to include allegations relevant to the invalidation of the releases.

**The Florida Class**
All persons or entities in Florida who are current or former owners and/or lessees of a Class Vehicle.

**The Michigan Class**
All persons or entities in Michigan who are current or former owners and/or lessees of a Class Vehicle.

**The South Carolina Class**
All persons or entities in South Carolina who are current or former owners and/or lessees of a Class Vehicle.

**The Washington Class**
All persons or entities in Washington who are current or former owners and/or lessees of a Class Vehicle.

**The California Class**
All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes, as defined by California Civil Code § 1791(a).

**The Missouri Class**
All persons or entities in Missouri who are current or former owners and/or lessees of a Class Vehicle.

**The Oregon Class**
All persons or entities in Oregon who are current or former owners and/or lessees of a Class Vehicle.

**The Virginia Class**
All persons or entities in Virginia who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes, as defined by Va. Code Ann. § 59.1-198.

**The Ohio Class**
All persons or entities in Ohio who are current or former owners and/or lessees of a Class Vehicle.

- 13 -

**The Illinois Class**
All persons or entities in Illinois who are current or former owners and/or lessees of a Class Vehicle.

38.    Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definition.

39.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

40.    This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

41.    **Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))** – The members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe that at least 82,137 Class Vehicles were sold. Inasmuch as the class members may be identified through business records regularly maintained by Defendant and its employees and agents, and through the media, the number and identities of class members can be

ascertained.  Members of the Class can be notified of the pending action by e-mail,
mail, and supplemented by published notice, if necessary.

42.  **Commonality and Predominance (Federal Rule of Civil
Procedure 23(a)(2))** – There are questions of law and fact common to the Class.
These questions predominate over any questions affecting only individual class
members.  These common legal and factual issues include, but are not limited to:

a.  Whether Defendant engaged in the conduct alleged herein;

b.  Whether Defendant designed, advertised, marketed, distributed,
leased, sold, or otherwise placed Class Vehicles into the stream of
commerce in the United States;

c.  Whether Defendant designed, manufactured, marketed, distributed,
leased, sold or otherwise placed Class Vehicles into the stream of
commerce in the United States knowing that the fuel-economy
ratings of the Class Vehicles were false;

d.  When Defendant first learned of the false fuel-economy ratings of
the Class Vehicles;

e.  Whether Defendant intentionally concealed from consumers the
true fuel-economy ratings of the Class Vehicles;

f.  Whether Plaintiffs and the other Class members have been harmed
by the fraud alleged herein;

g. Whether Defendant was negligent in misrepresenting the fuel-economy ratings of the Class Vehicles;

h. Whether Defendant was unjustly enriched by its deceptive practices;

i. Whether Plaintiffs and members of the class are entitled to equitable relief in the form of rescission of the purchase agreement or other injunctive relief and, if so, in what amount.

43. **Typicality (Federal Rule of Civil Procedure 23(a)(3))** – The claims of the representative Plaintiffs are typical of the claims of each member of the Class. Plaintiffs, like all other members of the Class, have sustained damages arising from Defendant's conduct as alleged herein. The representative Plaintiffs and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendant.

44. **Adequacy (Federal Rule of Civil Procedure 23(a)(4))** – The representative Plaintiffs will fairly and adequately represent and protect the interests of the Class members and they have retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiffs and the

members of the Class that would make class certification inappropriate.  Counsel for the Class will vigorously assert the claims of all Class members.

45.   **Superiority (Federal Rule of Civil Procedure 23(b)(3))** – This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3), because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.  Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them.  Even if Class members themselves could afford such individual litigation, the court system could not.  In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

46.    The representative Plaintiffs contemplate the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action.  Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices.  To the extent that any further notices may be required, the representative Plaintiffs would contemplate the use of additional media and/or mailings.

## VI.    VIOLATIONS ALLEGED

### COUNT I
### VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT
### (On Behalf of the Nationwide Class or, Alternatively, the Michigan Class)

47.    Plaintiffs incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

48.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Nationwide Class against Defendant.

49.    The Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.901, *et seq.*, is designed to provide a remedy for consumers who are injured by deceptive business practices.  The MCPA expressly allows for class actions on behalf of consumers who have suffered a loss as a result of a violation of the Act.  *See* Mich. Comp. Laws § 445.911(3).

50.    Plaintiffs, the Class members, and GM are persons under the MCPA.

51.     As discussed in detail herein, by marketing and selling the Class Vehicles with false fuel-economy ratings, GM's conduct constitutes unfair, unconscionable, and deceptive acts because GM:

   a.  Caused a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, (Mich. Comp. Laws § 445.903(1)(a));

   b.  Represented that the Class Vehicles had sponsorship, approval, characteristics, uses, and quantities that they do not have, (Mich. Comp. Laws § 445.903(1)(c));

   c.  Represented that the Class Vehicles are of a particular standard, quality, or grade, (Mich. Comp. Laws § 445.903(1)(e));

   d.  Advertised the Class Vehicles with intent not to sell the Class Vehicles as advertised or represented, (Mich. Comp. Laws § 445.903(1)(g));

   e.  Failed to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer, (Mich. Comp. Laws § 445.903(1)(s));

   f.  Made representations of fact or statement of fact material to the transaction such that a person reasonably believes the represented

or suggested state of affairs to be other than it actually is, (Mich. Comp. Laws § 445.903(1)(bb)); and

g. Failed to reveal facts which are material to the transaction in light of representations of fact made in a positive manner, (Mich. Comp. Laws § 445.903(1)(cc));

52. Specifically, as discussed herein, GM knew, or should have known, it was making misrepresentations about the fuel-economy ratings of the Class Vehicles by falsely inflating the city, highway, and combined mpg.

53. GM also concealed, omitted, and failed to disclose that the Class Vehicles had not been adequately tested and certified in accordance with the EPA's fuel-economy testing.

54. As shown through their purchase of the Class Vehicles, Plaintiffs and the Class reasonably relied on GM's misrepresentations and omissions of material facts.

55. Because of GM's violation of the MCPA, Plaintiffs and the Class members suffered actual damages, including the increased costs of fuel and diminished resale value of the Class Vehicles, and any other compensatory or consequential damages allowed by law, in an amount to be determined at trial.

## COUNT II
## VIOLATIONS OF THE FLORIDA DECEPTIVE
## AND UNFAIR TRADE PRACTICES ACT
### (On Behalf of the Florida Class)

56.    Plaintiffs incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

57.    Plaintiffs Braley and Tyson ("Plaintiffs" for purposes of this claim) bring this cause of action on behalf of themselves and on behalf of the members of the Florida Class against Defendant.

58.    The purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202 (2).

59.    Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members the fact that the Class Vehicles' fuel-economy ratings are false and inflated.  Defendant should have disclosed this information because it was in a superior position to know the true facts related to the fuel-economy, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true fuel-economy of the Class Vehicles on their own.

60.    Plaintiffs and the other Class members were injured as a result of Defendant's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

<u>COUNT III</u>
**VIOLATIONS OF THE SOUTH CAROLINA
UNFAIR TRADE PRACTICES ACT
(On Behalf of the South Carolina Class)**

61.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

62.    Plaintiff Ellis ("Plaintiff" for purposes of this claim) brings this cause of action on behalf of herself and on behalf of the members of the South Carolina Class against Defendant.

63.    The South Carolina Unfair Trade Practices Act ("SCUTP") prohibits "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a). Defendant is a person within the meaning of S.C. Code Ann. § 39-5-10(a).

64.    Trade or commerce as defined by the SCUTP includes the "sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situate[d] . . ." and includes "any trade or commerce directly or indirectly affecting the people"

of South Carolina. S.C. Code Ann. § 39-5-10(b). Defendant's advertising for sale and sale of the Class Vehicles at issue in this case are "property" under the SCUTP and affect the people of South Carolina directly and indirectly.

65.     Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the practices described above, and by knowingly and intentionally concealing from Plaintiff and Class members the fact that the Class Vehicles' fuel-economy ratings are false and inflated.  Defendant should have disclosed this information because it was in a superior position to know the true facts related to the fuel-economy, and Plaintiff and Class members could not reasonably be expected to learn or discover the true fuel-economy of the Class Vehicles on their own.

66.     Defendant's actions as set forth above occurred in the conduct of trade or commerce, and constitute deceptive trade practices under the SCUTP.

67.     Plaintiff and the other Class members were injured as a result of Defendant's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

68.     Plaintiff seeks an award of actual damages, treble damages, attorneys' fees and costs as permitted by the SCUTP. S.C. Code Ann. § 39-5-140.

## COUNT IV
## VIOLATIONS OF THE WASHINGTON
## CONSUMER PROTECTION ACT
### (On Behalf of the Washington Class)

69.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

70.     Plaintiff Sylvester Tibbit ("Plaintiff" for purposes of this claim) brings this cause of action on behalf of himself and on behalf of the members of the Washington Class against Defendant.

71.     The Washington Consumer Protection Act ("WCPA") makes unlawful to commit "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Wash Rev. Code Ann. § 19.86.020.  The WCPA provides a private right of action for "[a]ny person who is injured in his or her business or property" by violations of the Act. Wash. Rev. Code Ann. § 19.86.090.

72.     Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and the Class Members the true fuel-economy of the Class Vehicles (and the costs and diminished value of the vehicles as a result of Defendant's conduct). Defendant should have disclosed this information because it was in a superior position to know the true facts related to the fuel-economy, and Plaintiff and Class Members

could not reasonably be expected to learn or discover the true facts related to the fuel-economy.

73.    The unfair methods of competition and unfair and deceptive acts have caused injuries to Plaintiff and the members of the Class.

74.    The injuries suffered by Plaintiff and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class members should have reasonably avoided.

75.    Plaintiff and the other Class members were injured as a result of Defendant's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

## COUNT V
## VIOLATIONS OF CALIFORNIA'S CONSUMER
## LEGAL REMEDIES ACT ("CLRA")
### (On Behalf of the California Class)

76.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

77.    Plaintiff Linda Kemp ("Plaintiff" for purposes of this claim) brings this cause of action on behalf of herself and on behalf of the members of the California Class against Defendant.

78.     Defendant is a person as that term is defined in California Civil Code § 1761(c).

79.     Plaintiff and the Class are "consumers" as that term is defined in California Civil Code §1761(d).

80.     Defendant engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class Members that the Class Vehicles' fuel-economy ratings are false and inflated. These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

81.     Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

82.     Defendant knew that the Class Vehicles and their fuel-economy ratings were false and inflated.

83.    Defendant was under a duty to Plaintiff and the Class Members to disclose the true fuel-economy rating of the Class Vehicles because:

      a.    Defendants were in a superior position to know the true state of facts about the fuel-economy rating in the Class Vehicles;

      b.    Plaintiff and the Class Members could not reasonably have been expected to learn or discover that the Class Vehicles did not have the fuel-economy ratings advertised by Defendant;

      c.    Defendant knew that Plaintiff and the Class Members could not reasonably have been expected to learn or discover the true fuel-economy ratings of the Class Vehicles; and

      d.    Defendant actively concealed and failed to disclose the true fuel-economy ratings of the Class Vehicles from Plaintiff and the Class.

84.    In failing to disclose the fuel-economy ratings of the Class Vehicles at the time of sale, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

85.    The facts concealed or not disclosed by Defendant to Plaintiff and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Class Vehicles or pay a lesser price. Had Plaintiff and the Class known about the true fuel-economy ratings of Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

86.    Plaintiff and the other Class members were injured as a result of Defendant's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class

Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

87.     Plaintiff has provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) and seeks injunctive relief. After the 30 day notice period expires, Plaintiffs will amend this complaint to seek monetary damages under the CLRA.

88.     Plaintiff's and the other Class Members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

## COUNT VI
## VIOLATIONS OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200
### (On Behalf of the California Class)

89.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

90.     Plaintiff Linda Kemp ("Plaintiff" for purposes of this claim) brings this cause of action on behalf of herself and on behalf of the members of the California Class against Defendant.

91.     The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

92.     Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and the Class Members the true fuel-economy of the Class Vehicles (and the costs and diminished value of the vehicles as a result of Defendant's conduct). Defendant should have disclosed this information because it was in a superior position to know the true facts related to the fuel-economy, and Plaintiff and Class Members could not reasonably be expected to learn or discover the true facts related to the fuel-economy.

93.     These acts and practices have deceived Plaintiff and are likely to deceive the public. In failing to disclose the true fuel-economy and suppressing other material facts from Plaintiff and the Class Members, Defendant breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff and the Class Members. The omissions and acts of concealment by Defendant pertained to information that was material to Plaintiff and the Class Members, as it would have been to all reasonable consumers.

94.     Plaintiff and the other Class members were injured as a result of Defendant's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class

Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

95.     The injuries suffered by Plaintiff and the Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class Members should have reasonably avoided.

96.     Defendant's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*

97.     Plaintiff seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendant, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

## COUNT VII
## VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
### (On Behalf of the California Class)

98.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

99.     Plaintiff Linda Kemp ("Plaintiff" for purposes of this claim) brings this cause of action on behalf of herself and on behalf of the members of the California Class against Defendant.

100.    California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

101.    Defendant caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and the other Class Members.

102.    Defendant has violated section 17500 because the misrepresentations and omissions regarding the functionality of its Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

103.    Plaintiff and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles,

Plaintiff and the other Class Members relied on the misrepresentations and/or omissions of Defendant with respect to the reliability of the Class Vehicles. Defendant's representations were untrue because the Class Vehicles were distributed with false fuel-economy ratings. Had Plaintiff and the other Class Members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, Plaintiff and the other Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

104.   All of the wrongful conduct alleged herein occurred in the conduct of Defendant's business.

105.   Plaintiff, individually and on behalf of the other Class Members, request that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and the other Class Members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT VIII
## VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT
### (On Behalf of the Missouri Class)

106.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

107.   Plaintiff Cranor ("Plaintiff" for purposes of this claim) brings this cause of action on behalf of himself and on behalf of the Missouri Class against Defendant.

108.   The MMPA prohibits the "use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce."  Mo. Ann. Stat. § 407.020.1.

109.   Defendant has engaged in deception, fraud, unfair practices, and concealment by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and the Class Members the true fuel-economy of the Class Vehicles (and the costs and diminished value of the vehicles as a result of Defendant's conduct). Defendant should have disclosed this information because it was in a superior position to know the true facts related to the fuel-economy, and Plaintiff and Class Members could not reasonably be expected to learn or discover the true facts related to the fuel-economy.

110.   The facts concealed or not disclosed by Defendant to Plaintiff and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Class Vehicles or pay a lesser price. Had Plaintiff and the Class known about the true fuel-

economy ratings of Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

111.   Plaintiff and the other Class members were injured as a result of Defendant's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

112.   The injuries suffered by Plaintiff and the Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class Members should have reasonably avoided.

113.   Plaintiff's and the other Class Members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

**COUNT IX**
**VIOLATIONS OF OREGON'S UNLAWFUL TRADE PRACTICES LAW**
**(On Behalf of the Oregon Class)**

114.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

115.   Plaintiff Crawford ("Plaintiff" for purposes of this claim) brings this cause of action on behalf of herself and on behalf of the members of the Oregon Class against Defendant.

116.   Defendant is engaged in a "trade" and "commerce" within the meaning of Or. Rev. Stat. § 646.605(8).

117.   Defendant is a "person" within the meaning of Or. Rev. Stat. §§ 646.605(4), 646.607, and 646.608.

118.   Plaintiff's and the Class members' purchase of the Class Vehicles constitutes a "sale" within the meaning of Or. Rev. Stat. § 646.607.

119.   Defendant has engaged in unconscionable tactics, false advertising, deceptive practices, unlawful methods of competition, and/or unfair acts as defined in the UTPL, to the detriment of Plaintiffs and Class members.   Defendant's unconscionable tactics and deceptive practices have been intentionally, knowingly, and unlawfully perpetrated upon Plaintiffs and Class members in the following manner:

> a.   In violation of Or. Rev. Stat. § 646.607, Defendant employs an unconscionable tactic in connection with the sale of the Class Vehicles and represents that its Class Vehicles have characteristics, uses or benefits which they do not have;
>
> b.   In violation of Or. Rev. Stat. § 646.608(1)(e), Defendant represents its goods have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that they do not have;

    c. In violation of Or. Rev. Stat. § 646.608(1)(g), represents that the Class Vehicles are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, but are of another.

    d. In violation of Or. Rev. Stat. § 646.608(1)(i), advertises the Class Vehicles with intent not to provide the Class Vehicles as advertised;

120. The facts concealed or not disclosed by Defendant to Plaintiff and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Class Vehicles or pay a lesser price. Had Plaintiff and the Class known about the true fuel-economy ratings of Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

121. Plaintiff and the other Class members were injured as a result of Defendant's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

122. The injuries suffered by Plaintiff and the Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition,

nor are they injuries that Plaintiff and the Class Members should have reasonably avoided.

123.  Plaintiff's and the other Class Members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

## COUNT X
## VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT
### (On Behalf of the Virginia Class)

124.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

125.   Plaintiff Stager ("Plaintiff" for purposes of this claim) brings this cause of action on behalf of herself and on behalf of the members of the Virginia Class against Defendant.

126.   The Virginia Consumer Protection prohibits "(5) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; (6) misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; … (8) advertising goods or services with intent not to sell them as advertised …; [and] (14) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]"  Va. Code Ann. § 59.1-200(A).

127.   Defendant is a "person" as defined by Va. Code Ann. § 51.1-198. The transactions between Plaintiff and the other Class members on one hand and

Defendant on the other, leading to the purchase or lease of the Class Vehicles by Plaintiff and the other Class members, are "consumer transactions" as defined by Va. Code Ann. § 59.1-198, because the Class Vehicles were purchased or leased primarily for personal, family or household purposes.

128.   Defendant has engaged in deception, fraud, unfair practices, and concealment by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and the Class Members the true fuel-economy of the Class Vehicles (and the costs and diminished value of the vehicles as a result of Defendant's conduct). Defendant should have disclosed this information because it was in a superior position to know the true facts related to the fuel-economy, and Plaintiff and Class Members could not reasonably be expected to learn or discover the true facts related to the fuel-economy.

129.   The facts concealed or not disclosed by Defendant to Plaintiff and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Class Vehicles or pay a lesser price. Had Plaintiff and the Class known about the true fuel-economy ratings of Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

130.   Plaintiff and the other Class members were injured as a result of Defendant's conduct in that Plaintiff and the other Class members overpaid for

their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

131.   The injuries suffered by Plaintiff and the Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class Members should have reasonably avoided.

132.   Plaintiff's and the other Class Members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

**COUNT XI**
**VIOLATIONS OF THE OHIO CONSUMER**
**SALES PRACTICES ACT**
**(On Behalf of the Ohio Class)**

133.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

134.   Plaintiff Ford ("Plaintiff" for purposes of this claim) brings this cause of action on behalf of herself and the Ohio Class against Defendant.

135.   Plaintiff and the other Ohio Class members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("OCSPA").  Defendant is a "supplier" as defined by the OCSPA.  Plaintiff's and the other Ohio Class members' purchases or leases of Class Vehicles were "consumer transactions" as defined by the OCSPA.

136. By failing to disclose and actively concealing the fuel-economy ratings of the Class Vehicles, Defendant engaged in deceptive business practices prohibited by the OCSPA, including (1) representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Class Vehicles with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false or deceptive to the consumer.

137. As alleged above, Defendant made material statements about the benefits and characteristics of fuel-economy of the Class Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Defendant's unlawful advertising and representations as a whole.

138. Defendants' false, unfair, deceptive, and unconscionable acts have previously been declared to be false, unfair, deceptive, or unconscionable by the Ohio Attorney General, who has made the following materials, among others, publicly available for inspection, which materials declare actions similar to Defendants' to be unfair, deceptive, and unconscionable:

- *In the matter of Gateway Distributors, Ltd.,* June 14, 2006, Attorney General Public Inspection File Number 10002461 (company "shall not make any express or implied statements in the offer or sale of [its] products that have capacity, tendency or effect of deceiving or misleading consumers or that fail to state any material fact, the omission of which deceives or tends to deceive consumers).

- *In re MillerCoors*, December 23, 2008, Attorney General Public Inspection File Number 10002740 (company agrees to stop manufacturing, marketing, and providing unsafe product until product is reformulated);

- *Ohio v Purdue Pharma, Inc.,* May 08, 2007, Franklin County Case Number 07-CVH-05-6195, Attorney General Public Inspection File Number 10002558 (company prohibited from making misleading statements regarding the use of its product);

- *Ohio v. The Dannon Co., Inc.,* December 22, 2010, Franklin County Case Number 10-CVH-12-18225, Attorney General Public Inspection File number 10002917 (along with $21 million payment, company enjoined from making any express or implied claims about certain characteristics of its product)

- *Ohio v. GlaxoSmithKline, LLC*, June 23, 2011, Lucas County Case Number CI-2011-3928, Attorney General Public Inspection File Number 10002956 (along with paying $40.75 million, company shall not make any writer or oral claim for the products that is false, misleading or deceptive or represent that the products have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities, or qualities that products do not have, or cause likelihood or confusion or misunderstanding as to products' source, sponsorship, or certification);

- *In re Warner-Lambert Company, LLC*, May 13, 2014, Attorney General Public Inspection File Number 10002243 (company agrees, inter alia, not to make false, misleading, or deceptive oral or written claims about its product).

139.  It is also a deceptive act or practice for purposes of the CSPA if a supplier makes representations, claims, or assertions of fact in the absence of a reasonable basis in fact, as Ohio Admin. Code § 109:4-3-10(A) specifically proscribes such statements:

- 41 -

> Make any representations, claims or assertions of fact,
> whether orally or in writing, which would cause a
> reasonable consumer to believe such statements are true,
> unless, at the time such representations, claims or
> assertions are made, the supplier possesses or relies upon
> a reasonable basis in fact such as factual, objective,
> quantifiable, clinical or scientific data or other competent
> and reliable evidence which substantiates such
> representations, claims or assertions of fact.

140.   Defendant had ample prior notice that when selling goods it is a false, unfair, deceptive, and unconscionable act or practice to misrepresent their quality, make misleading statements of opinions concerning them, misrepresent their uses, and place inaccurate advertisements regarding their descriptions for sale.

141.   Accordingly, Defendant also had prior notice that if they engaged in the foregoing false, unfair, deceptive, and unconscionable practices and other related acts, the CSPA would require them to make full restitution and reimbursement to their victimized purchasers.

142.   In conjunction with the violations of O.R.C. § 1345.02 set forth above, Defendants violated O.A.C. § 109:4-3-10 because, in connection with a consumer transaction, Defendants made written representations, claims, or assertions of fact that caused reasonable consumers to believe their statements were true when at the time Defendants made these representations, claims, or assertions they neither possessed nor relied upon reasonable bases in fact, such as factual, objective,

quantifiable, clinical or scientific data, or other competent and reliable evidence, to substantiate their representations, claims, or assertions of fact.

143. The foregoing O.A.C. provision provided Defendants additional notice that their acts were false, unfair, deceptive, and unconscionable in violation of the CSPA.

144. Defendants' CSPA violations directly and proximately caused damage to Plaintiff and the Ohio class members.

145. According to O.R.C. § 1345.09(A), Plaintiff and the Ohio class members are entitled to rescind their consumer transactions or to recover their actual damages.

146. According to O.R.C. § 1345.09(F)(2), Plaintiff and the Ohio class members are entitled to their attorneys' fees since Defendants knowingly committed an act or practice that violates the CSPA.

147. According to O.R.C. § 1345.09(E), this Complaint will be served upon the Ohio Attorney General, Michael DeWine.

## COUNT XII
## VIOLATIONS OF THE ILLINOIS
## CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT
### (On Behalf of the Illinois Class)

148. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

149.   Plaintiff Willit ("Plaintiff" for purposes of this claim) brings this cause of action on behalf of himself and the Illinois Class against Defendant.

150.   Illinois's Consumer Fraud and Deceptive Business Practices Act prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce, including among others, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, … whether any person has in fact been misled, deceived, or damaged thereby."   815 ILCS 505/2.   The Act also prohibits suppliers from representing that their goods are of a particular quality or grade that they are not.

151.   The Class Vehicles are "merchandise" as defined in 815 ILCS 505/1(b).   GM is a "person" as defined in 815 ILCS 505/1(c).   Plaintiff and the other Class members are "consumers" as defined in 815 ILCS 505/1(e).

152.   Defendant has engaged in deception, fraud, unfair practices, and concealment by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and the Class Members the true fuel-economy of the Class Vehicles (and the costs and diminished value of the vehicles as a result of Defendant's conduct). Accordingly, GM engaged in unfair or deceptive acts or practices as defined in 815 ILCS 505/2, including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do

not have; representing that Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

153.   The facts concealed or not disclosed by Defendant to Plaintiff and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Class Vehicles or pay a lesser price. Had Plaintiff and the Class known about the true fuel-economy ratings of Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

154.   Plaintiff and the other Class members were injured as a result of Defendant's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

155.   The injuries suffered by Plaintiff and the Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class Members should have reasonably avoided.

156.   Plaintiff's and the other Class Members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

157.   GM's conduct in this regard was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiff and the other Class members and, as such, warrants the imposition of punitive damages.

## COUNT XIII
## VIOLATIONS OF THE ILLINOIS
## UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (On Behalf of the Illinois Class)

158.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

159.   Plaintiff Willit ("Plaintiff" for purposes of this claim) brings this cause of action on behalf of himself and the Illinois Class against Defendant.

160.   Illinois's Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, prohibits deceptive trade practices, including among others, "(2) caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (5) represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have …; (7) represent[ing] that goods or services are of a particular standard, quality, or grade … if they are of another; … (9) advertis[ing] goods or services with intent not to sell them as advertised; … [and] (12) engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

161.   GM is a "person" as defined in 815 ILCS 510/1(5).

162.   Defendant has engaged in deception, fraud, unfair practices, and concealment by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and the Class Members the true fuel-economy of the Class Vehicles (and the costs and diminished value of the vehicles as a result of Defendant's conduct). Accordingly, GM engaged in unfair or deceptive acts or practices as defined in 815 ILCS 510/2, including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

163.   The facts concealed or not disclosed by Defendant to Plaintiff and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Class Vehicles or pay a lesser price. Had Plaintiff and the Class known about the true fuel-economy ratings of Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

164.   Plaintiff and the other Class members were injured as a result of Defendant's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class

Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

165. The injuries suffered by Plaintiff and the Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class Members should have reasonably avoided.

166. Plaintiff's and the other Class Members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

## COUNT XIV
## FRAUD
**(On Behalf of the Nationwide Class or, Alternatively, Each of the Sub-Classes)**

167. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

168. Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class against Defendant.

169. The misrepresentations, nondisclosure, and/or concealment of material facts made by Defendant to Plaintiffs and the members of the Class, as set forth above, were known, or through reasonable care should have been known, by Defendant to be false and material and were intended to mislead Plaintiffs and the members of the Class.

170.   Plaintiffs and the Class were actually misled and deceived and were induced by Defendant to purchase the Class Vehicles which they would not otherwise have purchased, or would have paid substantially less for.

171.   As a result of the conduct of Defendant, Plaintiffs and the Class members have been damaged in an amount to be determined at trial.

## COUNT XV
## NEGLIGENT MISREPRESENTATION
**(On Behalf of the Nationwide Class or, Alternatively, Each of the Sub-Classes)**

172.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

173.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class against Defendant.

174.   Defendant had a duty to provide honest and accurate information to its customers so that customers could make informed decisions on the substantial purchase of automobiles.

175.   Defendant specifically and expressly misrepresented material facts to Plaintiffs and Class members, as discussed above.

176.   Defendant knew, or in the exercise of reasonable diligence, should have known, that the ordinary and reasonable consumer would be misled by the Defendant's misleading and deceptive advertisements.

177.   Plaintiffs and the Class members justifiably relied on Defendant's misrepresentations and have been damaged thereby in an amount to be determined at trial.

## COUNT XVI
## UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class or, Alternatively, Each of the Sub-Classes)**

178.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

179.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class against Defendant.

180.   Because of its wrongful acts and omissions, Defendant charged a higher price for the Class Vehicles than the Class Vehicles' true value and Defendant obtained money which rightfully belongs to Plaintiffs and the members of the Class.

181.   Plaintiffs and members of the Class conferred a benefit on Defendant by purchasing or leasing the Class Vehicles.

182.   Defendant had knowledge that this benefit was conferred upon them.

183.   Defendant has been unjustly enriched at the expense of Plaintiffs, and its retention of this benefit under the circumstances would be inequitable.

184.   Plaintiffs seek an order requiring Defendant to make restitution to them and the other members of the Class.

## COUNT XVII
## BREACH OF EXPRESS WARRANTY
**(On Behalf of the Nationwide Class or, Alternatively, Each of the Sub-Classes)**

185.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

186.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class against Defendant.

187.   In selling the Class Vehicles, Defendant expressly warranted in advertisements, including the stickers affixed to the windows of the Class Vehicles, that the Class Vehicles experienced 24 mpg on the highway, resulting in a combined rating of 19 mpg.

188.   These affirmations and promises were part of the basis of the bargain between the parties.

189.   Defendants breached these express warranties arising from their advertisements, including window stickers, because the fuel economy ratings for their vehicles were false.

190.   As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs and members of the Class have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for judgment as follows:

1. For an order certifying this action as a class action;

2. For an order appointing Plaintiffs as representatives of the Class and their counsel of record as Class counsel;

3. For an award of actual, general, special, incidental, statutory, compensatory and consequential damages on claims for fraud and in an amount to be proven at trial;

4. For an award of exemplary and punitive damages in an amount to be proven at trial;

5. For attorneys' fees and costs;

6. For an order enjoining the wrongful conduct alleged herein;

7. For an order invalidating the releases GM has solicited to date;

8. For interest;

9. For such equitable relief as the Court deems just and appropriate, including but not limited to, rescission;

10. For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

DATED:  August 3, 2016                    Respectfully submitted:

BY:   /s/     E. Powell Miller_____
      E. Powell Miller (P39487)
      Sharon Almonrode (P33938)
      **MILLER LAW FIRM, P.C.**
      950 W University Dr # 300,
      Rochester, Michigan 48307
      Telephone: (248) 841-2200
      epm@millerlawpc.com
      ssa@millerlawpc.com

      Joseph G. Sauder*
      Matthew D. Schelkopf*
      Joseph B. Kenney*
      **MCCUNEWRIGHT LLP**
      1055 Westlakes Drive, Suite 300
      Berwyn, Pennsylvania 19312
      Telephone: (909) 557-1250
      jgs@mccunewright.com
      mds@mccunewright.com
      jbk@mccunewright.com

      Richard D. McCune*
      David C. Wright*
      **MCCUNEWRIGHT LLP**
      2068 Orange Tree Lane
      Suite 216
      Redlands, California 92374
      Telephone: (909) 557-1250
      rdm@mccunewright.com
      dcw@mccunewright.com

      *Eastern District Applications to be
      Submitted*

      *Interim Class Counsel*

- 53 -

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TIFFANY ELLIS, STEPHEN TYSON, GAIL BRALEY, DAVID LYALL, LINDA KEMP, SYLVESTER TIBBITS, LUCAS CRANOR, MARY CRAWFORD, IRENE STAGER, NATASHA FORD, and GARRY WILLET, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>General Motors, LLC,<br><br>Defendant. | ) Case No.: 2:16-cv-11747-GCS-APP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2016, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

By: /s/ *E. Powell Miller*
E. Powell Miller (P39487)
**MILLER LAW FIRM, P.C.**
950 W University Dr # 300,
Rochester, Michigan 48307
Telephone: (248) 841-2200