## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TIFFANY ELLIS, STEPHEN TYSON, GAIL BRALEY, DAVID LYALL, LINDA KEMP, SYLVESTER TIBBITS, LUCAS CRANOR, MARY CRAWFORD, IRENE STAGER, NATASHA FORD, and GARRY WILLET, on behalf of themselves and all others similarly situated, | Case No.: 2:16-cv-11747-CGS-APP |
| | **CLASS ACTION** |
| | Hon. George Caram Steeh |
| | Magistrate Judge Anthony P. Patti |
| Plaintiffs, | |
| v. | |
| General Motors, LLC, | |
| Defendant | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT

**PLEASE TAKE NOTICE** that for the reasons set forth in the attached Suggestions in support of this Motion, Named Plaintiffs, Tiffany Ellis, Stephen Tyson, Gail Braley, David Lyall, Linda Kemp, Sylvester Tibbits, Lucas Cranor, Mary Crawford, Irene Stager, Natasha Ford, And Garry Willet, individually and on behalf of the class, submit this Unopposed Motion for Preliminary Approval of the Proposed Class Action Settlement, and respectfully request that the Court enter the Proposed Preliminary Approval Order attached as Exhibit C to the Settlement

Agreement, Exhibit 1. The reasons supporting this Motion are set forth in the accompanying Memorandum in Support.

DATED: July 14, 2017                                    Respectfully submitted:

                                    BY:   */s/ E. Powell Miller*
                                          E. Powell Miller (P39487)
                                          Sharon Almonrode (P33938)
                                          **MILLER LAW FIRM, P.C.**
                                          950 W University Drive, Suite 300
                                          Rochester, Michigan 48307
                                          Telephone: (248) 841-2200
                                          epm@millerlawpc.com
                                          ssa@millerlawpc.com

                                          Joseph G. Sauder*
                                          Matthew D. Schelkopf*
                                          Joseph B. Kenney*
                                          **MCCUNE WRIGHT AREVALO LLP**
                                          555 Lancaster Avenue
                                          Berwyn, Pennsylvania 19312
                                          Telephone: (909) 557-1250
                                          jgs@mccunewright.com
                                          mds@mccunewright.com
                                          jbk@mccunewright.com

                                          Richard D. McCune*
                                          David C. Wright*
                                          Elaine S. Kusel
                                          **MCCUNE WRIGHT AREVALO LLP**
                                          3281 E Guasti Road
                                          Suite 100
                                          Ontario, California 91761
                                          Telephone: (909) 557-1250
                                          Facsimile: (909) 557-1275
                                          rdm@mccunewright.com
                                          dcw@mccunewright.com
                                          esk@mccunewright.com

2

*Pro Hac Vice Applications to be Submitted*

**Attorneys for Plaintiff and the Putative Class and Proposed Class Counsel**

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| TIFFANY ELLIS, STEPHEN TYSON, GAIL BRALEY, DAVID LYALL, LINDA KEMP, SYLVESTER TIBBITS, LUCAS CRANOR, MARY CRAWFORD, IRENE STAGER, NATASHA FORD, and GARRY WILLET, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) | Case No.: 2:16-cv-11747-CGS-APP **CLASS ACTION** Hon. George Caram Steeh Magistrate Judge Anthony P. Patti |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| General Motors, LLC, | ) ) | |
| _____ Defendant _____ | ) ) | |

---

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT

---

## **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................1

II.    FACTUAL BACKGROUND......................................................3

    A.    History of the Litigation.............................................3

    B.    Settlement Negotiations ............................................4

III.   THE SETTLEMENT...................................................................5

    A.    Terms of the Settlement Agreement ........................5

    B.    Notice to Settlement Class Members .......................7

    C.    Separate Motion for Attorneys' Fees and Incentive Awards...............8

IV.   ARGUMENT.............................................................................9

    A.    The Settlement is Fair, Reasonable, and Adequate............................12

        1.    The risk of fraud or collusion...................................13

        2.    The complexity, expense and likely duration of the litigation .14

        3.    The amount of discovery engaged in by the parties ................15

        4.    The likelihood of success on the merits...................16

        5.    The opinions of class counsel and class representatives ..........18

        6.    The public interest...................................................18

    B.    The Settlement Meets the Requirements of Rule 23...........................19

        1.    Numerosity...............................................................21

        2.    Commonality............................................................21

        3.    Typicality ................................................................23

        4.    Adequacy ................................................................24

        5.    The requirements of Rule 23(b)(3) are met ............25

C.     The Court Should Order Dissemination of the Notice........................29

V.     CONCLUSION.................................................................................................33

# TABLE OF AUTHORITIES

Cases

*Am. Med. Sys., Inc.*,

    75 F.3d 1069, (6th Cir. 1996) ...................................................................... 28, 30

*Amchem Prods., Inc. v. Windsor*,

    521 U.S. 591 (1997) ................................................................................. *passim*

*Augustin v. Jablonsky*,

    461 F.3d 219, (2d Cir. 2006) ................................................................................37

*Bacon v. Honda of America Mfg., Inc.*,

    370 F.3d 565, (6th Cir. 2004) ..............................................................................26

*Beattie v. CenturyTel, Inc.*,

    511 F.3d 554, (6th Cir. 2007) ..............................................................................28

*Chandler v. Southwest Jeep-Eagle*,

    162 F.R.D. 302, (N.D. Ill.1995) ..........................................................................34

*Clark Equip. Co. v. Int'l Union of Allied Industrial Workers of Am.*,

    803 F.2d 878,  (6th Cir. 1986) ..............................................................................13

*Daffin v. Ford Motor Co*.,

    458 F.3d 549, (6th Cir. 2006) ......................................................... 25, 27, 29, 37

*Detroit Police Officers Ass'n v. Young*,

    920 F. Supp. 755, (E.D. Mich. 1995) ..................................................................11

*Dick v. Sprint Commc'ns Co. L.P.*,

    297 F.R.D. 283, (W.D. Ky. 2014) .......................................................................38

*Galoski v. Applica Consumer Prod.*,

    309 F.R.D. 419, (N.D. Ohio 2015) .....................................................................34

*Gooch v. Life Investors. Ins. Co. of Am.*,

    672 F.3d 402, (6th Cir. 2012)) ............................................................................31

iv

*Griffin v. Flagstar Bancorp, Inc.*,

  2013 WL 6511860, (E.D. Mich. Dec. 12, 2013) ...........................................22, 27

*Grunin v. Int'l House of Pancakes*,

  513 F.2d 114 (8th Cir. 1975) ........................................................................40

*Henderson v. Volvo Cars of N. Am., LLC*,

  2013 WL 1192479, (D.N.J. Mar. 22, 2013) .........................................................35

*In re American Medical Systems, Inc.*,

  75 F.3d at 1084 ................................................................................................32

*In re Cardizem CD Antitrust Litig.*,

  200 F.R.D. 297, (E.D. Mich. 2001) ......................................................................33

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,

  2009 WL 5184352, (W.D. Ky. Dec. 22, 2009) .....................................................35

*In re Foundry Resins Antitrust Litig.*,

  242 F.R.D. 393, (S.D. Ohio May 2007) ....................................................... 25, 33

*In re Gen. Tire & Rubber Co. Sec. Litig.*,

  726 F.2d 1075, (6th Cir. 1984) ...........................................................................19

*In re Inter-Op Hip Prosthesis Liab. Litig.*,

  204 F.R.D. 330, (N.D. Ohio 2001) ............................................................... 12, 25

*In re Packaged Ice Antitrust Litig.*,

  2010 WL 3070161, (E.D. Mich. Aug. 2, 2010) ...................................................12

*In re Potash Antitrust Litig.*,

  159 F.R.D. 682, (D. Minn. 1995)) ......................................................................33

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,

  177 F.R.D. 216, (D.N.J. 1997) ..........................................................................38

*In re Teletronics*,

  168 F.R.D. 203, (S.D. Ohio 1996) ......................................................................28

*In re UnitedHealth Group, Inc. Shareholder Derivative Litigation*,

  631 F.3d 913 (8th Cir. 2011) ...................................................................... 40, 41

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
 722 F.3d 838, (6th Cir. 2013) ....................................................................... *passim*

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
 396 F.3d 922 (8th Cir. 2005) ...............................................................17

*International Union v. Ford Motor Co.*,
 2006 WL 1984363, (E.D. Mich. July 13, 2006)). ................................27

*International Union v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL
 1984363, at *4 (E.D. Mich. July 13, 2006) ..........................................12

*IUE-CWA v. General Motors Corp.*,
 238 F.R.D. 583, (E.D. Mich. 2006). .....................................................29

*Leonhardt v. ArvinMeritor, Inc.*,
 581 F. Supp. 2d 818, (E.D. Mich. 2008) ..............................................16

*Olden v. Gardner*,
 294 F. App'x 210, (6th Cir. 2008) ........................................................19

*Rankin v. Rots*,
 2006 WL 1876538, (E.D. Mich. June 27, 2006) ...................................13

*Rikos v. Procter & Gamble Co.*,
 799 F.3d 497, (6th Cir. 2015) ...............................................................26

*Senter v. General Motors Corp.*,
 532 F.2d 511, 6th Cir. 1976)) ...............................................................35

*Smith v. Ajax Magnethermic Corp.*,
 2007 WL 3355080, (N.D. Ohio Nov. 7, 2007). ....................................15

*Stout v. J.D. Byrider*,
 228 F.3d 709, (6th Cir. 2000) ...............................................................30

*Sullivan v. DB Invs., Inc.*,
 667 F.3d 273, (3d Cir. 2011); ...............................................................35

*Tardiff v. Knox County*,
 365 F.3d 1, (1st Cir. 2004) ....................................................................37

*Taylor v. CSW Transp. Inc.*,

    264 F.R.D. 281, (N.D. Ohio 2007) ...................................................................30

*UAW v. General Motors Corp.*,

    2006 WL 891151, (E.D. Mich., Mar. 31, 2006) ..................................... 14, 19, 38

*Vassalle v. Midland Funding LLC*,

    708 F.3d 747, (6th Cir. 2013) ...................................................................... 14, 30

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338, (2011) ......................................................................................26

*Williams v. Vukovich*,

    720 F.2d 909, (6th Cir. 1983) ...........................................................................11

Rules

Fed. R. Civ. P. 23(a) ................................................................................. 9, 23, 37

Fed. R. Civ. P. 23(a)(2) ................................................................................ 25, 26

Fed. R. Civ. P. 23(a)(3) ......................................................................................28

Fed. R. Civ. P. 23(a)(1) ......................................................................................25

Fed. R. Civ. P. 23(a)(4) ......................................................................................29

Fed. R. Civ. P. 23(b) ................................................................................. 9, 23, 24

Fed. R. Civ. P. 23(b)(3) ................................................................... 32, 36, 37, 38

Fed. R. Civ. P. 23(c)(1)(B) ................................................................................24

Fed. R. Civ. P. 23(c)(2)(B). ......................................................................... 10, 37

Fed. R. Civ. P. 23(e)(2) ......................................................................................10

Fed. R. Civ. P. 23(e)(2)(5) ..................................................................................10

## I.    INTRODUCTION

Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that the Court issue an Order preliminarily approving the Settlement reached between Plaintiffs, Tiffany Ellis, Stephen Tyson, Gail Braley, David Lyall, Linda Kemp, Sylvester Tibbits, Lucas Cranor, Mary Crawford, Irene Stager, Natasha Ford, And Garry Willet, individually, and on behalf of the putative Class (collectively "Plaintiffs") and Defendant General Motors LLC ("Defendant" or "General Motors") (collectively, the "Parties") and Defendant General Motors, LLC consents to the requested approval Agreement.

A copy of the Settlement Agreement ("SA"), together with exhibits, is attached as Exhibit 1. The Settlement resolves numerous claims that would almost certainly never have been prosecuted as individual actions, and in so doing provides a substantial benefit to Plaintiffs and members of the Settlement Class.[1]

This litigation concerns the marketing and sale of the model year 2016 Chevrolet Traverse, Buick Enclave, and GMC Acadia vehicles. Plaintiffs allege that Defendant General Motors LLC ("GM") violated state consumer protection laws, engaged in fraud and misrepresentation and was unjustly enriched by overstating the EPA-estimated fuel economy ("mpg") ratings and their EPA-

---

[1] Capitalized terms used in this Memorandum are defined in Section 1 of the Settlement Agreement.

estimated 5-year fuel cost that federal law required to be displayed on the Class Vehicles "window stickers." GM denies all of Plaintiffs' allegations.

Following extensive discussions and mediation before Mediator Gene J. Esshaki, the Parties reached a tentative class action settlement, subject to approval of the Court. Both during and between mediation sessions, the parties engaged in extensive arm's-length negotiations that produced the Settlement, which makes available to all affected Class members monetary and other valuable relief while avoiding the risk of continued and uncertain litigation. Accordingly, Plaintiffs request that the Court enter an Order:

(1) preliminarily approving the Settlement of the claims against Defendant in this Action as set forth in the Settlement Agreement;

(2) certifying the class for purposes of Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; and appointing Interim Class Counsel as Class Counsel; (See Doc. 19. Opinion and Order Denying in Part and Granting in Part Plaintiff's Motion for Provisional Class Certification and Appointment of Class Counsel and Denying Plaintiff's Motion to Invalidate Releases and Enjoin Defendant);

(3) approving the form, substance and requirements of the proposed Notice and the method for disseminating notice to Class Members concerning the Settlement; (The proposed Notice is attached as Exhibit A to Ex 1 Settlement Agreement.);

(4) setting the date for a Final Approval Hearing to be held approximately 75 days from the date of entry of the Preliminary Approval Order, where the Court will consider Final Approval of the Settlement, as well as the amount of Attorneys' Fees and Litigation Expenses to award Class Counsel, and the amount of any Service Awards to the Named Plaintiffs.

## II.    FACTUAL BACKGROUND

### A. <u>History of the Litigation</u>

Plaintiff Sean Tolmasoff commenced this Action and brought causes of action for GM's alleged violations of state consumer protection laws, and alleging that GM engaged in fraud and misrepresentation and was unjustly enriched by overstating the EPA-estimated fuel economy ("mpg") ratings and their EPA-estimated 5-year fuel cost that federal law required to be displayed on the Class Vehicles "window stickers." (ECF No. 1.)

GM admitted that these estimates were inadvertently overstated by 1-2 mpg depending on the model of Class Vehicle involved and claimed that the overstatement was due to an inadvertent computer error. GM offered a compensation program for owners and lessors of affected vehicles. ("Compensation Program").

On July 7, 2016, Plaintiff asked the Court to enjoin GM from contacting unrepresented putative class members through the Compensation Program, to afford putative class members the opportunity to be represented in releasing their claims and for counsel to investigate the proposed compensation and any damages. After full briefing and oral argument, the Court declined to do so. (ECF No. 19.) At this time, the Court appointed The Miller Law Firm, P.C. and McCuneWright LLP as Interim Class Counsel. *Id.* at 18.

On August 3, 2016, a First Amended Class Action Complaint was filed with additional plaintiffs and additional causes of action. (ECF No. 22.) Plaintiff Tolmasoff elected to participate in the Compensation Program and withdrew as a plaintiff.

### B. Settlement Negotiations

The parties participated in mediation before Mediator Gene J. Esshaki and, following extensive subsequent discussions, reached a tentative class action settlement. The eligible purchasers and lessees of Class Vehicles who elected not to participate in the Compensation Program and did not otherwise release their claims against GM are eligible to participate in the settlement set forth in this Agreement and the approximately 7,600 vehicle identification numbers of their Class Vehicles are attached as Exhibit B to the SA.

After the Parties agreed to the terms of the tentative settlement, Plaintiffs' Counsel and GM engaged in separate negotiations, with the aid of the Mediator, concerning Plaintiffs' claim for an award of attorneys' fees and reimbursement of litigation costs and expenses ("Fees and Costs"). When the Parties could not reach agreement, they submitted the Fees and Costs issue for binding arbitration to Mr. Esshaki, and acting as an arbitrator, he issued his award on February 10, 2017 in the amount of $1,300,000 (subject to Court approval). Further, in a post arbitration dispute regarding payment of the mediator and notice and administration fees as

set forth in Sections V-A, VI-A, and VIII-A of the SA, Class Counsel agreed to reduce their fee by $15,000.00 (fifteen-thousand dollars) and Defendant agreed to assume the costs of payment of the mediator and notice and administration fees as set forth in Sections VI-A and VIII-A of the SA.

## III.   THE SETTLEMENT

### A. <u>Terms of the Settlement Agreement</u>

If approved, the Settlement will provide substantial benefits to the following Settlement Class as defined in Exhibit A to the Settlement Agreement: all persons within the United States who purchased or leased a retail new model year 2016 Chevrolet Traverse, Buick Enclave or GMC Acadia with a "window sticker" displaying incorrect EPA-estimated fuel economy and five-year fuel costs from an authorized GM dealer and who have *not* executed a release of any and all claims set forth in the Action in favor of GM in accordance with the Compensation Program described below and who have not otherwise released their claims against GM set forth in the Action, and who do not submit timely Requests for Exclusion. Class Members have the choice between the election of either Option 1 or Option 2, described below.

**<u>Option 1</u>**. Class Members can elect to receive a check payable in cash, in an amount calculated as follows: Class Members can elect to receive the difference in

the EPA-required 5-year fuel cost estimates shown on the original, incorrect window stickers and on the corrected window stickers, as follows:

|  | FWD | AWD Traverse/Acadia | AWD |
|---|---|---|---|
| Enclave |  |  |  |
| Incorrect combined estimated mpg | 19 | 19 | 18 |
| Corrected combined estimated mpg | 18 | 17 | 17 |
| Incorrect estimated fuel cost | $ 2,750 | $ 2,750 | $ 3,500 |
| Corrected estimated fuel cost | $ 3,500 | $ 4,250 | $ 4,250 |
| Compensation | $   750 | $ 1,500 | $   750 |

Lessees under Option 1 shall be paid pro rata amounts based on the length of their leases. For example, a person leasing an AWD Traverse or Acadia for 36 months is offered three-fifths of $1,500, or $900, representing the difference in five-year EPA-estimated fuel cost during the 36-month lease term.

**Option 2**. Class Members can elect to receive a voucher good for a $2,000 credit on the purchase of any new GM Vehicle from an authorized GM dealer in the United States within 3 years of the Effective Date. A Class Member electing to receive the voucher, or a member of the Class Member's Immediate Family, may use the voucher as a $2,000 credit on the purchase price negotiated with the GM dealer, in addition to any rebates or other incentives otherwise applicable to that

vehicle purchase on the date of purchase. The vouchers are otherwise non-transferable.

**Additional Relief**. If a Class Member timely and validly opts out, that Class Member may request a one-hour telephonic mediation with Defendant, to be conducted by Gene R. Esshaki. Such a mediation can result in the opt-out class member receiving less, more or nothing at all than the individual would have received as a result of participating in the settlement. Upon request, Counsel for Plaintiffs will represent the opt-out for the telephonic mediation only.

## B. Notice to Settlement Class Members

The Settlement Administrator shall mail to each Class Member, at the same time it mails the Class Notice, a Claim Form providing the Class Member with an option to receive the $2,000 voucher instead of receiving the check payable in cash. Class Members who wish to receive the check payable in cash will not be required to complete and return the Claim Form. Class Members who do not return the Claim Form or Class Members who do not opt out of the Settlement Class will automatically receive the check payable in cash, provided the proposed settlement is approved as provided for herein. A Class Member who wishes to receive the voucher must return the Claim Form to the Settlement Administrator indicating the election to receive the voucher by the Claims Form Deadline.

The Parties did not set dates for the Objection Deadline or the Request for Exclusion deadline in the Agreement. The Parties jointly recommend the Court set both the Objection Deadline and the Request for Exclusion Deadline forty-five (45) days following the Notice Date.

GM shall coordinate with the Settlement Administrator to provide the checks payable in cash or vouchers to the Class Members following the Effective Date. The checks payable in cash and vouchers shall be mailed to Class Members (excluding those who file a timely Request for Exclusion) within sixty (60) days from the Effective Date.

## C. <u>Separate Motion for Attorneys' Fees and Incentive Awards</u>

GM agrees not to oppose Class Counsel's application for attorneys' fees, costs and expenses to be paid by GM as long as that total does not exceed one million three hundred thousand dollars ($1,300,000), and Class Counsel agree that they will not seek attorneys' fees, costs and expenses from the Court that exceed that sum. Further, in a post arbitration dispute regarding payment of mediator and notice and administration fees as set forth in Sections II-J, VI-A, and VIII-A of the SA, Class Counsel agreed to reduce their fee by $15,000.00 (fifteen-thousand dollars) and Defendant agreed to assume the costs of payment of the mediator and notice and administration fees as set forth in Sections VI-A and VIII-A of the SA.

GM also agrees not to oppose Plaintiffs' application for an incentive award to each of the Plaintiffs ("Incentive Award") to be paid by GM as long as the Incentive Award to each Plaintiff does not exceed $500.

## IV.   ARGUMENT

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The court's approval process includes several essential tasks. *See In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *6 (N.D. Ohio Sept. 23, 2016).[2] First, to certify a class for settlement, a court must consider whether the proposed class meets the requirements of Rule 23(a) & (b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "The plaintiffs carry the burden to prove that the class certification prerequisites are met . . . and the plaintiffs, as class representatives, were required to establish that they possess the same interest and suffered the same injury as the class members they seek to represent." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013) (citations omitted).

Second, the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," advising class members of the

---

[2] All unpublished cases collected in alphabetical order as Exhibit 4.

nature of the action, the class definition, and their right to object or exclude themselves from the certified class. Fed. R. Civ. P. 23(e)(2), (5); *see also* Fed. R. Civ. P. 23(c)(2)(B).

And third, after a hearing, this Court must determine that the terms of the settlement are fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). *See also In Re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*, 2016 WL 5338012 at *6 (citing *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 98 (E.D. Pa. 2013) ("a class action cannot be settled without the approval of the court and a determination that the proposed settlement is 'fair, reasonable and adequate'")). "Approval of a proposed settlement is committed to the sound discretion of the trial court and the order approving a settlement will not be disturbed absent an abuse of discretion.*" Detroit Police Officers Ass'n v. Young*, 920 F. Supp. 755, 760 (E.D. Mich. 1995) (citing *Bailey v. Great Lakes Canning*, Inc., 908 F.2d 38, 42 (6th Cir. 1990)). The basic test for fairness involves "weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983).

Generally, the standards for certification of a settlement class are less rigorous than in a litigated certification contest. For example, the superiority requirement is relaxed. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would

present intractable management problems… for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997). Likewise, the predominance requirement is less demanding because "common issues that preexisted the proposed settlement—involving a common product, defendant, and course of conduct—when considered in light of the proposed settlement, predominate over any individual issues between class members." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 347 (N.D. Ohio 2001).

"A proposed settlement agreement should be preliminarily approved if '[t]he Court finds that the proposed settlement falls within the range of possible approval, does not disclose grounds to doubts its fairness, and includes no obvious deficiencies.'" *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010) (citing *International Union v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363, at *4 (E.D. Mich. July 13, 2006)). The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v. Int'l Union of Allied Industrial Workers of Am.*, 803 F.2d 878, 880 (6th Cir. 1986). Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by

counsel for the class, is presented for court approval." 4 HERBERT B. NEWBERG &

ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2005) ("*Newberg*")

(collecting cases); *cf. Rankin v. Rots*, No. 02-cv-71045, 2006 WL 1876538, at *3

(E.D. Mich. June 27, 2006) ("[T]he only question . . . is whether the settlement,

taken as a whole, is so unfair on its face as to preclude judicial approval.") (internal

quotation marks omitted).

### A. <u>The Settlement is Fair, Reasonable, and Adequate</u>

To evaluate the fairness, reasonableness, and adequacy of a proposed class

action settlement, courts within the Sixth Circuit refer to a list of seven factors

identified in *UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). *See*

*In re: Whirlpool*, 2016 WL 5338012 at *6. These factors are: "(1) the risk of fraud

or collusion; (2) the complexity, expense and likely duration of the litigation; (3)

the amount of discovery engaged in by the parties; (4) the likelihood of success on

the merits; (5) the opinions of class counsel and class representatives; (6) the

reaction of absent class members; and (7) the public interest." *Vassalle v. Midland*

*Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *UAW*, 497 F.3d at 631).

In addition, "[a]lthough not included in the seven *UAW* factors, in evaluating the

fairness of a settlement [the Sixth Circuit has] also looked to whether the

settlement 'gives preferential treatment to the named plaintiffs while only

perfunctory relief to unnamed class members.'" *Id.* at 755 (quoting *Williams*, 720

F.2d at 925 n.11). "At this preliminary approval stage, however, only certain of these factors are relevant to the fairness inquiry." *See Smith v. Ajax Magnethermic Corp.*, No. 4:02CV0980, 2007 WL 3355080, at *6 (N.D. Ohio Nov. 7, 2007).

### 1. The risk of fraud or collusion

Here, there is no evidence to rebut the "presumption that the class representatives and counsel handled their responsibilities with the independent vigor that the adversarial process demands." *In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, 2016 WL 5338012, at *10 (citing *UAW*, 497 F.3d at 631). The Parties reached the Settlement only after mediating their claims before an experienced mediator and following extensive arm's-length negotiations between counsel for the parties. Class Counsel extensively investigated the applicable law as applied to the relevant facts discovered in this action, and the potential defenses thereto. Those efforts included dozens of interviews with Class Members and the exchange of key documents with Defendant. The Settlement is based on a robust review of the facts and law.

In reaching the proposed Settlement, Class Counsel relied on their substantial litigation experience in similar complex class actions and automotive class action cases, and a thorough analysis of the legal and factual issues presented. Plaintiffs' liability and damages evaluation was premised on a careful and extensive analysis of claims and financial data produced by Defendant. Settlement

negotiations were facilitated and supervised by Gene J. Esshaki, an experienced and respected mediator. The proposed Settlement Agreement is the product of careful factual and legal research and arms'-length negotiations between the Parties, and is presumptively fair. *See Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) ("Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."). There is nothing in the course of the negotiations or the substance of the settlement that discloses grounds to doubt its fairness – "[w]here a class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair." *Manual* § 21.662 at 464.

## 2. *The complexity, expense and likely duration of the litigation*

Where, as here, proceeding with litigation would require a substantial amount of time to yield a potential marginal incremental benefit to the Class and result in a large increase in Class Counsel's already-substantial fees and costs, a proposed settlement is fair, reasonable, and adequate. *In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, 2016 WL 5338012, at *10 (noting continued litigation of multi-state class action class action through trial and appeals would be "onerous and overwhelming" and favored settlement because it "avoids a huge consumption of resources of the parties and the Court").

In the instant case, the complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement. Litigating the claims of the putative Class would require substantial additional preparation, including significant, additional time-consuming and expensive discovery, briefing and arguing contested motions for class certification and summary judgment, formal expert discovery, and, if the case were to proceed to trial, extensive pre-trial briefing, trial preparation, participation in trial, the determination of how to allocate and distribute damages, and, potentially, post-trial briefing and resulting appeals. Conversely, resolving this case by means of the proposed Settlement will yield a prompt, and certain, recovery for the Settlement Class. GM has admitted to the inadvertent misstatement of the EPA estimated mpg of the Class Vehicles and is offering compensation to the Settlement Class using the same formula for anticipated fuel costs that was displayed with the Class Vehicles prior to sale. Accordingly, the proposed Settlement will benefit the parties and the court system.

### 3.  The amount of discovery engaged in by the parties

The Parties engaged in confirmatory discovery before agreeing to the Settlement including in-person meetings. In connection with the mediation, the Parties exchanged documents and data relevant to Plaintiffs' claims. This discovery allowed the Parties to understand the strengths and weaknesses of their

claims and defenses, and reach a Settlement that provides relief to affected Settlement Class Members while accounting for the risks of continued litigation. *Compare Id.* at *10 (holding extensive discovery engaged in supported approval of settlement); *with Olden v. Gardner*, 294 F. App'x 210, 218 (6th Cir. 2008) (explaining that the lack of pre-settlement discovery can "weaken[ ] the class counsels' ability to advocate effectively for the plaintiff class during settlement negotiations and therefore suggests that the settlement was not fair, reasonable, and adequate").

### 4. The likelihood of success on the merits

"The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, 2016 WL 5338012, at *11 (citing *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). In evaluating the likely success on the merits, this Court's task is not to "decide whether one side is right or even whether one side has the better of these arguments," because that would "defeat the purpose of a settlement in order to approve a settlement." *UAW*, 497 F.3d at 632. "Rather, it is enough if the evidence shows that: (1) the parties are locked in a real dispute regarding whether [the product at issue] is defective; and (2) the merits of the Class's case are not so overwhelming that continued litigation

is a vastly better option than settlement." *In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, 2016 WL 5338012, at *11.

Here, a preliminary review of the Agreement reveals the fairness, reasonableness, and adequacy of its terms. Option 1 allows Class Members to receive a check payable in cash in an amount based on the corrected estimated mpg of the Class Vehicles that compensates them for the difference between the incorrect and corrected estimated fuel costs. Option 2 allows Class Members to receive a voucher for a $2,000 credit toward the purchase of any new GM Vehicle from an authorized GM dealer within 3 years of the Effective Date under the Agreement. This relief easily satisfies the reasonableness standard, especially when considering the difficulty and risks presented by pursuing further litigation.

Specifically, although Class Counsel are confident in the merits of Plaintiffs' claims, the law with regard to Plaintiffs' claims is contested throughout the country and within the Sixth Circuit. Plaintiffs in this case face significant risks if they proceed with litigation, including the looming possibility of a fiercely contested class certification proceeding and trial. This legal uncertainty, the risk of establishing liability in complex class action cases such as this, along with the risks of proving damages, militate strongly in favor of the proposed Settlement. That is, in contrast to the uncertain outcome of litigation, the Settlement Agreement enables members of the Settlement Classes to obtain a certain and immediate

financial benefit without incurring the unnecessary risks of proceeding with litigation on contested and uncertain legal issues.

### 5. *The opinions of class counsel and class representatives*

The opinions of Plaintiffs' counsel and of the class representatives favor final settlement approval. Plaintiffs' counsel have extensive experience litigating consumer class actions, and Class Counsel support settlement approval. *See* The Miller Firm Resume, attached hereto as Exhibit 2; McCune Wright Arevalo Firm Resume, attached hereto as Exhibit 3. Class Counsel has spent *hundreds* of hours becoming familiar with the strengths and weaknesses of their claims while litigating this case. Class Counsel has also consulted with each of the class representatives regarding the proposed Settlement, and each class representative has agreed to the Settlement.

"In sum, the Court has no reason to second-guess Class Counsel's conclusion that the settlement reached with the Defendants is fair, reasonable, adequate, and in the best interest of the class." *In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, 2016 WL 5338012, at *11.

### 6. *The public interest*

"'[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously "difficult and unpredictable" and settlement conserves judicial resources.'" *Griffin v. Flagstar*

*Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *5 (E.D. Mich. Dec. 12, 2013) (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). The Settlement achieved in this case "provides relief for a substantial number of class members, avoids further litigation, and frees the Court's judicial resources." *Id.* As such, the public interest also supports the proposed Settlement.

### B.  <u>The Settlement Meets the Requirements of Rule 23</u>

Federal Rule of Civil Procedure 23 sets forth the requirements for certifying a proposed class:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). The Supreme Court has summarized these four basic requirements as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). In addition to fulfilling the four prerequisites of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b). *See In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *5. Pursuant to Rule 23(b), a class action may be maintained if: (1) there is otherwise a risk of (a) inconsistent

19

adjudications or (b) impairment of interests for non-class members; (2) the defendant's conduct applies generally to the whole class; or (3) questions of law or fact common to members of the class predominate, and the class action is a superior method for adjudication. *See* FED. R. CIV. P. 23(b)(1)-(3). In addition, pursuant to Rule 23(c)(1)(B), "[a]n order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)."

Generally, the standards for certification of a settlement class are less rigorous than in a litigated certification contest. For example, the superiority requirement is relaxed. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems… for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997). Likewise, the predominance requirement is less demanding because "common issues that preexisted the proposed settlement—involving a common product, defendant, and course of conduct—when considered in light of the proposed settlement, predominate over any individual issues between class members." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 347 (N.D. Ohio 2001).

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Sixth Circuit does not employ a strict numerical test; instead, proof of "substantial numbers" of class members satisfy the numerosity requirement. *Daffin v. Ford Motor Co*., 458 F.3d 549, 552 (6th Cir. 2006)). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 403 (S.D. Ohio May 2007) (citing *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Here, the approximately 7,600 Settlement Class Members easily satisfies the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) provides that a class action may be maintained only if "there are questions of law or fact common to the class." Commonality is satisfied if the named plaintiffs show that their claims 'depend upon a common contention' that is "'of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1493, 194 L. Ed. 2d 597

(2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)). Plaintiffs need only identify one common question of law or fact to establish commonality. *Griffin*, 2013 WL 6511860, at *6 (citing *International Union v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363, at *19 *(E.D. Mich. July 13, 2006)).

In this case, there are numerous questions of law and fact that are common to the class, at least for settlement purposes, including but not limited to, whether the GM violated the consumer protection statutes alleged in the First Amended Complaint, whether GM's conduct constitutes actionable fraud, and whether GM was unjustly enriched. Moreover, GM admitted that the EPA mpg estimates were inadvertently overstated by 1-2 mpg depending on the model of the Class Vehicle involved and claimed the overstatement was due to an inadvertent computer error. (Agreement at ¶ II.D.) The Commonality requirement is therefore satisfied here. *Daffin*, 458 F.3d at 552 (finding commonality based on question of whether automobile part was defective and whether warranty covered repairs satisfied commonality); *see also In re Teletronics*, 168 F.R.D. 203, 213 (S.D. Ohio 1996) (holding that there was commonality where the plaintiffs used two "virtually identical" pacemaker models and the issue was whether the defendant's conduct caused metal-fatigue failure).

### 3. Typicality

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23(a)(3). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1069, 1082 (6th Cir.1996)). "Like commonality, the typicality requirement is not onerous, and is satisfied if there is a strong similarity of legal theories, 'even if substantial factual distinctions exist between the named and unnamed class members.'" *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 592 (E.D. Mich. 2006).

Plaintiffs' claims undoubtedly are typical of those of absent Class Members, as all Settlement Class Members' claims arise from Defendant's sale of the Class Vehicles. *See Daffin*, 458 F.3d at 553 (finding typicality where the "class members' claims arise from the same practice (delivery of non-conforming vehicle), the same defect (the allegedly defective throttle body assembly), and are based on the same legal theory (breach of express warranty) . . . despite the different factual circumstances regarding the manifestation of the [defect] . . . .").

### 4. Adequacy

The final prerequisite for class certification is adequacy of representation, which requires a showing that "the representative parties will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). The adequacy requirement applies both to Plaintiffs and their counsel. *Taylor v. CSW Transp. Inc.*, 264 F.R.D. 281, 291 (N.D. Ohio 2007) (citation omitted). The Sixth Circuit uses a two-prong test to determine if the class representatives will fairly and adequately protect the interests of the class: "'1) [T]he representative must have common interests with unnamed class members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Vassalle*, 708 F.3d at 757 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)).   Additionally, the court reviews "'the adequacy of class representation to determine whether class counsel are qualified, experienced, and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another.'" *Id.* (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (citation omitted)). "'Only when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate.'" *Id.* (quoting *Gooch v. Life Investors. Ins. Co. of Am.*, 672 F.3d 402, 431 (6th Cir. 2012)).

First, Plaintiffs have no interests that are antagonistic to those of the Class. As purchasers or lessors of Defendant's Class Vehicles who claimed to have suffered losses as a result of Defendant's alleged actions, Lead Plaintiffs' interests are directly aligned with the interests of all Class Members.  Lead Plaintiffs and the absent Class Members have precisely the same interest in proving their claims against Defendant.

Second, Plaintiffs have retained counsel highly experienced in consumer class action litigation to prosecute their claims and the claims of the Class. As this Court previously recognized when appointing The Miller Law Firm, P.C. and McCune Wright Arevalo LLP as Interim Class Counsel, both firms have extensive experience litigating consumer class actions on behalf of injured consumers and have obtained significant recoveries in this area of the law. *See* ECF No. 19.

Thus, Rule 23(a)'s adequacy requirement is satisfied.

### 5.  *The requirements of Rule 23(b)(3) are met*

Plaintiffs seek to certify the Settlement Classes under Rule 23(b)(3), which has two components: predominance and superiority. The court need only find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

a. Predominance

Subdivision (b)(3) of Rule 23 parallels subdivision (a)(2) in that "both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re American Medical Systems, Inc.*, 75 F.3d at 1084 (citing 1 Newberg, supra, § 3.10, at 3–56). "Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.*, 722 F.3d 838, 859 (6th Cir. 2013). Instead, "[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001)). Common questions need only predominate; they need not be dispositive of the litigation. Id. (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)).

In *Daffin*, the Sixth Circuit upheld the district court's finding of predominance in an automobile defect class action notwithstanding the existence of potential individualized issues. The court found the predominant issues in the litigation to be "(1) whether the throttle body assembly is defective, (2) whether

the defect reduces the value of the car, and (3) whether Ford's express "repair or replace" warranty covers the latent defect at issue in this case." 458 F.3d at 554.The Sixth Circuit went on to state that "[t]his is a case in which, assuming the throttle body is the same in every car, class members all have the same express warranty claim." *Id.* (citing *Chandler v. Southwest Jeep-Eagle*, 162 F.R.D. 302, 310 (N.D. Ill.1995) (predominance requirement satisfied where all consumers received the same service contract and the principal question was whether the service contract violated consumer protection laws)); *see also Galoski v. Applica Consumer Prod.*, 309 F.R.D. 419, 424 (N.D. Ohio 2015) (finding predominance where "[t]he only remaining issue in this case is whether Applica's product, packaged and marketed as a "pest repeller" is, in fact, capable of effectively repelling pests.").

In the instant action, for settlement purposes, several common questions of law and fact predominate over any questions that may affect individual Settlement Class Members such that certification of the proposed Settlement Class is appropriate. For example, were this case to proceed, the litigation would have focused on whether Defendant is liable for admitting it inadvertently misstated the EPA estimated mpg on the Class Vehicles. Those issues are subject to "generalized proof," and are "question[s] . . . common to all class members." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL

5184352, at *6 (W.D. Ky. Dec. 22, 2009) (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)) ("the proof required [must focus] on Defendant's conduct, not on the conduct of individual class members."). *See also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 299 (3d Cir. 2011); *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146 (CCC), 2 2013 WL 1192479, at *6 (D.N.J. Mar. 22, 2013). Accordingly, the predominance requirement is satisfied.

### b. Superiority

The class action also must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). When assessing superiority, the Court considers "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action." *Id.* In the settlement context, however, the latter consideration is not relevant. See *Amchem*, 521 U.S. at 620.

The Settlement Agreement provides members of the Settlement Class with prompt, predictable, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class

Members who are dissatisfied with the Settlement to object or to exclude themselves. The Settlement also relieves the substantial judicial burdens imposed by repeated adjudication of the same issues in potentially numerous individualized trials against Defendant. Therefore, "class status here is not only the superior means, but probably the only feasible [way] . . . to establish liability and perhaps damages." *Augustin v. Jablonsky*, 461 F.3d 219, 229 (2d Cir. 2006) (quoting *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004)); *see also Daffin*, 458 F.3d at 554 ("Permitting individual owners and lessees of 1999 or 2000 Villagers to litigate their cases is a vastly inferior method of adjudication when compared to determining threshold issues of contract interpretation that apply equally to the whole class.").

In sum, the proposed Settlement Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3), and should be certified.

### C. <u>The Court Should Order Dissemination of the Notice</u>

Rule 23(c)(2)(B) requires that the Court direct adequate notice to all class members in a class action certified under Rule 23(b)(3). This notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v. General Motors Corp.*, 05-CV–73991, 2006 WL 891151, at *33 (E.D. Mich., Mar. 31, 2006) (citing *In re Prudential Ins. Co. of Am.*

29

*Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997)). "[T]he notice must reasonably convey the required information and allow a reasonable time for interested parties to make their appearance." *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014). "Finally, the notice must fairly apprise the prospective class members of the proposed settlement's terms, as well as the options available to them." *Id.*

The proposed Settlement contains a comprehensive notice plan, to be paid for by Defendant and administered by an experienced settlement administrator. The Class Notice will be sent to each Class Member by first-class mail by the Settlement Administrator within 21 days following the Court's entry of the Preliminary Approval Order. The Settlement Administrator shall mail the Class Notice to each Class Member at the address reflected in GM's records. However, if the Settlement Administrator identifies a different mailing address by utilizing the National Change of Address ("NCOA") database for any Class Member, then the Settlement Administrator shall mail the Class Notice to the name and address as reflected in the NCOA database. With respect to any Class Notice returned to the Settlement Administrator as undeliverable, the Settlement Administrator shall take reasonable steps to obtain a more current address, and if found, mail the Class Notice to the new address. All costs relating to providing Class Notice to the Class Members, including the costs for preparation and mailing of the Class Notice, and

for obtaining accurate address information for Class Members in accordance with this paragraph, will be borne solely by General Motors. The Notice and Administrative Costs paid by GM will be separate and apart from the settlement benefits payable to the Class Members under the Settlement, the attorneys' fees, costs and expenses payable by GM to Class Counsel and the Incentive Awards payable by GM to Plaintiffs.

The proposed Notice also fulfills the requirement of neutrality in class notices. *See* CONTE & NEWBERG at § 8.39. It summarizes the proceedings necessary to provide context for the Settlement Agreement and summarizes the terms and conditions of the Settlement. *See In re UnitedHealth Group, Inc. Shareholder Derivative Litigation*, 631 F.3d 913, 917-918 (8th Cir. 2011) ("The purpose of a settlement notice is to provide "shareholders with sufficient information for them to make a 'rational decision whether they should intervene in the settlement approval procedure.'") (internal citations omitted). This summary includes an explanation of how the settlement amount will be allocated among the Settlement Class, named Plaintiffs, Class Counsel, and the Claims Administrator. In addition, the summary of the Settlement's terms is set forth in an informative, coherent and easy-to-understand manner in compliance with the Manual for Complex Litigation's recommendation that "the notice contain a clear, accurate description of the terms of the settlement." MANUAL FOR COMPLEX LITIG. at §

21.312; *see also Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 122 (8th Cir. 1975) (noting that it was sufficient if a notice contained a general summary of benefits to class members and an "estimation" of attorney's fees and expenses).

The Notice Plan clearly explains the procedures and deadlines for making a claim, opting out of the Settlement or submitting objections, the consequences of taking or foregoing the various options available to members of the Settlement Class, and the date, time and place of the final approval hearing. *See In re UnitedHealth Group*, 631 F.3d at 917-18. Pursuant to Federal Rule of Civil Procedure 23(h), the proposed Notice also makes clear that the cost of settlement administration and notice, attorneys' fees and costs, and named Plaintiff incentive awards will be *not* reduce the amounts the Settlement Class can claim under the Agreement, and explains the amounts that will be requested and the procedure by which Class Counsel will apply for their fees. It also makes clear that the decision about whether to finally approve of the settlement has not yet been made.

Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. CONTE & NEWBERG at §§ 8.21 and 8.39; MANUAL FOR COMPLEX LITIG. at § 21.311 and 21.312.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order substantially in the form of Exhibit C attached to the Settlement Agreement (i) preliminarily approving the settlement, including approving the form and substance of the proposed form of Notice and directing that notice be given to prospective members of the Class; (ii) certify the Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; and (iii) appoint The Miller Law Firm, P.C. and McCune Wright Arevalo LLP as Class Counsel; (iv) schedule a hearing at which approval of the Settlement, and an award of attorneys' fees and litigation expenses to Lead Counsel may be considered and (v) grant further relief as the Court deems just and proper.

DATED: July 14, 2017                            Respectfully submitted,

BY:    */s/ E. Powell Miller*
          E. Powell Miller (P39487)
          Sharon Almonrode (P33938)
          **MILLER LAW FIRM, P.C.**
          950 W University Drive, Suite 300
          Rochester, Michigan 48307
          Telephone: (248) 841-2200
          epm@millerlawpc.com
          ssa@millerlawpc.com

          Joseph G. Sauder*
          Matthew D. Schelkopf*
          Joseph B. Kenney*
          **MCCUNE WRIGHT AREVALO LLP**
          555 Lancaster Avenue
          Berwyn, Pennsylvania 19312

Telephone: (909) 557-1250
jgs@mccunewright.com
mds@mccunewright.com
jbk@mccunewright.com

Richard D. McCune*
David C. Wright*
Elaine S. Kusel
**MCCUNE WRIGHT AREVALO LLP**
3281 E Guasti Road
Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275
rdm@mccunewright.com
dcw@mccunewright.com
esk@mccunewright.com

*Pro Hac Vice Applications to be
Submitted*

**Attorneys for Plaintiff and the
Putative Class and Proposed Class
Counsel**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TIFFANY ELLIS, STEPHEN TYSON, GAIL BRALEY, DAVID LYALL, LINDA KEMP, SYLVESTER TIBBITS, LUCAS CRANOR, MARY CRAWFORD, IRENE STAGER, NATASHA FORD, and GARRY WILLET, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| General Motors, LLC, | ) ) |
| Defendant | ) |

Case No.: 2:16-cv-11747-CGS-APP

**CLASS ACTION**

Hon. George Caram Steeh

Magistrate Judge Anthony P. Patti

## CERTIFICATE OF SERVICE

I hereby certify that, on July 14, 2017 I electronically filed the foregoing with the Clerk of the Court using the ECF system which will notify all counsel of record authorized to receive such filings.

**THE MILLER LAW FIRM, P.C.**

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com