## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| TIFFANY ELLIS, STEPHEN TYSON, GAIL BRALEY, DAVID LYALL, LINDA KEMP, SYLVESTER TIBBITS, LUCAS CRANOR, MARY CRAWFORD, IRENE STAGER, NATASHA FORD, and GARRY WILLET, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) | Case No.: 2:16-cv-11747-CGS-APP  **CLASS ACTION**  Hon. George Caram Steeh  Magistrate Judge Anthony P. Patti |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| GENERAL MOTORS, LLC, | ) ) | |
| Defendant | ) | |

## PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

**PLEASE TAKE NOTICE** that for the reasons set forth in the attached Memorandum in support of this Motion, Named Plaintiffs, Tiffany Ellis, Stephen Tyson, Gail Braley, David Lyall, Linda Kemp, Sylvester Tibbits, Lucas Cranor, Mary Crawford, Irene Stager, Natasha Ford, And Garry Willet, individually and on behalf of the class, submit this Unopposed Motion for Attorneys' Fees, Expenses, and Incentive Awards. The reasons supporting this Motion are set forth in the accompanying Memorandum in Support.

DATED: September 1, 2017                    Respectfully submitted:

BY:   /s/ E. Powell Miller
      E. Powell Miller (P39487)
      Sharon Almonrode (P33938)
      THE MILLER LAW FIRM, P.C.
      950 W University Drive, Suite 300
      Rochester, Michigan 48307
      Telephone: (248) 841-2200
      epm@millerlawpc.com
      ssa@millerlawpc.com

      Joseph G. Sauder*
      Matthew D. Schelkopf*
      Joseph B. Kenney*
      MCCUNE WRIGHT AREVALO LLP
      555 Lancaster Avenue
      Berwyn, Pennsylvania 19312
      Telephone: (909) 557-1250
      jgs@mccunewright.com
      mds@mccunewright.com
      jbk@mccunewright.com

      Richard D. McCune*
      David C. Wright*
      Elaine S. Kusel
      MCCUNE WRIGHT AREVALO LLP
      3281 E Guasti Road
      Suite 100
      Ontario, California 91761
      Telephone: (909) 557-1250
      Facsimile: (909) 557-1275
      rdm@mccunewright.com
      dcw@mccunewright.com
      esk@mccunewright.com

      *Attorneys for Plaintiffs and the
      Putative Class and Proposed Class
      Counsel*

2

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| TIFFANY ELLIS, STEPHEN TYSON, GAIL BRALEY, DAVID LYALL, LINDA KEMP, SYLVESTER TIBBITS, LUCAS CRANOR, MARY CRAWFORD, IRENE STAGER, NATASHA FORD, and GARRY WILLET, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) | Case No.: 2:16-cv-11747-CGS-APP<br><br>**CLASS ACTION**<br><br>Hon. George Caram Steeh<br><br>Magistrate Judge Anthony P. Patti |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| GENERAL MOTORS, LLC, | ) ) | |
| Defendant | ) | |

_____

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS
_____

# **TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................................1

II.  FACTUAL BACKGROUND.............................................................................2

    A.  History of the Litigation........................................................................2

    B.  Settlement Negotiations .........................................................................3

III.  THE SETTLEMENT..........................................................................................5

    A.  Terms of the Settlement Agreement ....................................................5

    B.  Notice to Settlement Class Members ....................................................7

    C.  Preliminary Approval Order and Response by Settlement Class
         Members ....................................................................................................8

IV.  ARGUMENT.......................................................................................................8

    A.  The Value of the Settlement...................................................................9

    B.  The Fee Request Should Be Evaluated Under the Percentage-of-the-
         Fund Theory ...........................................................................................11

    C.  Class Counsel's Request is Reasonable and Falls Squarely within the
         Range of Awards in Similar Class Action Settlements.......................13

    D.  The Ramey Factors Support Class Counsel's Request ......................14

         1.  Value of the benefit rendered to Plaintiffs and the Settlement
               Class ...........................................................................................15

         2.  Value of the services on an hourly basis...................................16

         3.  Whether the services were undertaken on a contingent fee basis
               ...................................................................................................18

         4.  Society's stake in rewarding attorneys who produce benefits..19

         5.  Complexity of the litigation....................................................19

6.    Professional skill and standing of counsel involved on both sides.........................................................................21

E.    Class Counsel's Expenses Should Be Approved ...............................22

F.    The Requested Incentive Awards Should Be Approved....................22

V.    CONCLUSION.......................................................................................24

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Basile v. Merrill Lynch, Pierce, Fenner & Smith*,
    640 F. Supp. 697 (S.D. Ohio 1986)…………………………………………...15

*Chesher v. Neyer*,
    No. 1:01-cv-566, 2007 WL 4553908 (S.D. Ohio Dec. 19, 2007)…...……...13

*Clevenger v. Dillards, Inc.*,
    No. C-1-02-558, 2007 WL 764291 (S.D. Ohio Mar. 9, 2007)……………..13

*Dick v. Sprint Comms. Co. L.P.*,
    297 F.R.D. 283 (W.D. Ky. 2014)………………………………………20, 22

*Gascho v. Global Fitness Holdings, LLC*,
    822 F.3d 269 (6th Cir. 2016)…………………………………………………...9

*Godec v. Bayer Corp.*,
    No. 1:10-cv-224, 2013 WL 1089549 (N.D. Ohio Mar. 14, 2013)…15, 16, 21

*Hadix v. Johnson*,
    322 F.3d 895 (6th Cir. 2003)………………………………………………….23

*Hainey v. Parrott*,
    No. 1:02-cv-733, 2007 WL 3308027 (S.D. Ohio Nov. 6, 2007)…………...13

*Hensley v. Eckerhart*,
    461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)………………….....17

*In re Cardinal Health Inc. Sec. Litigs.*,
    528 F. Supp. 2d 752 (S.D. Ohio 2007)…………………………..…*passim*

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003)……………………………………13, 22

*In re CMS Energy ERISA Litig.*,
    No. 02–72834, 2006 WL 2109499 (E.D. Mich. June 27, 2006)…….……..14

*In re Nat. Century Fin. Enterprises, Inc. Inv. Litig.*,
 No. 2:03-MD-1565, 2009 WL 1473975 (S.D. Ohio May 27, 2009)………13

*In re Polyurethane Foam Antitrust Litig.*,
 135 F. Supp. 3d 679 (N.D. Ohio 2015)...………………………...………23

*In re Polyurethane Foam Antitrust Litig.*,
 168 F. Supp. 3d 985 (N.D. Ohio 2016)………………………………………12

*In re Southern Ohio Corr. Facility*,
 173 F.R.D. 205, 218 (S.D. Ohio 1997),
 *rev'd on other grounds*, 24 F. App'x 520 (6th Cir. 2001) …………………14

*In re Telectronics Pacing Sys., Inc.*,
 137 F. Supp. 2d 1029 (S.D. Ohio 2001)……………………………………19

*In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*,
 No. 1:08-WP-65000, 2016 WL 5338012 (N.D. Ohio Sept. 23, 2016)…….24

*In re WorldCom Sec. Litig.*,
 388 F. Supp. 2d 319 (S.D.N.Y. 2005)………………………………………...17

*Lonardo v. Travelers Indem. Co.*,
 706 F. Supp. 2d 766 (N.D. Ohio 2010)………………………...13, 17, 19, 23

*Lowther v. AK Steel Corp.*,
 No. 1:11-cv-877, 2012 WL 6676131 (S.D. Ohio Dec. 21, 2012)……..*passim*

*Manners v. American General Life Ins. Co.*,
 No. 98-0266, 1999 WL 33581944 (M.D. Tenn. Aug.11, 1999)…………...13

*Moulton v. U.S. Steel Corp.*,
 581 F.3d 344 (6th Cir. 2009)…………………………………..……8, 9, 14

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
 636 F.3d 235 (6th Cir. 2011)…………………………………………………14

*Ramey v. Cincinnati Enquirer, Inc.*,
 508 F.2d 1188 (6th Cir. 1974)………………………………………………...15

*Rawlings v. Prudential-Bache Properties, Inc.*,
   9 F.3d 513 (6th Cir. 1993)……………………………...……….8, 11, 12

*Thacker v. Chesapeake Appalachia, L.L.C.*,
   695 F. Supp. 2d 521 (E.D. Ky. 2010)………………………….....13, 14

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,
   436 Fed. Appx. 496 (6th Cir. 2011)………………………………..11

*Walls v. JPMorgan Chase Bank, N.A.*,
   No. 11-cv-673, 2016 WL 6078297 (W.D. Ky. Oct. 14, 2016)……………18

## **Other Authority**

Fed. R. Civ. P. 23(h)……………………………………………...……8

*Newberg on Class Actions* § 12.55 (3d ed.)………………………………17

*Newberg on Class Action* § 14.6 (4th ed.)…………………………………...18

## I.      INTRODUCTION

Plaintiffs respectfully submit this memorandum of law in support of their request for an award of attorneys' fees, expenses, and incentive awards. Class Counsel undertook substantial risk in bringing and prosecuting the instant action on a purely contingent basis with no guarantee of recovery, and ultimately secured a favorable settlement that confers substantial benefits on the Settlement Class. Accordingly, Class Counsel respectfully requests that the Court enter the accompanying Order that awards (a) $1,285,000 in attorneys' fees, costs, and expenses pursuant to Section V(A) of the Settlement Agreement, and (b) incentive awards of $500 to each Plaintiff pursuant to Section V(C) of the Settlement Agreement.[1]

Following extensive discussions and mediation before Mediator Gene J. Esshaki, the Parties reached a class action settlement that was preliminarily approved by the Court on July 19, 2017. (ECF No. 36.)  Both during and between mediation sessions, the parties engaged in extensive arm's-length negotiations that produced the Settlement, which makes available to all affected Settlement Class Members substantial monetary relief while avoiding the risk of continued and uncertain litigation.

---

[1] The Settlement Agreement ("Settlement" or "SA") was submitted with Plaintiffs' Unopposed Motion for Preliminary Approval. (ECF No. 34, Exhibit 1.) The capitalized terms used in this Memorandum are defined in Section 1 of the SA.

The Notice provided to Settlement Class Members by first class mail to addresses on record with General Motors informed them of Class Counsel's intent to seek fees, expenses, and incentive awards in the amounts requested herein, and no Settlement Class Members have objected to the requested fee award.

As discussed below, given the amount of work performed by Class Counsel, the results achieved and the other applicable factors, Class Counsel's fee and expense requests are reasonable and should be approved. The incentive awards requested by Plaintiffs are also within the range approved by courts within the Sixth Circuit, and are warranted here to recognize the time and effort Plaintiffs committed to this case. In light of the foregoing, Plaintiffs respectfully request that the Court enter the accompanying proposed Order.

## II.      FACTUAL BACKGROUND

### A. History of the Litigation

Plaintiff Sean Tolmasoff commenced this Action and brought causes of action for GM's alleged violations of state consumer protection laws, engaged in fraud and misrepresentation and was unjustly enriched by overstating the EPA-estimated fuel economy ("mpg") ratings and their EPA-estimated 5-year fuel cost that federal law required to be displayed on the Class Vehicles "window stickers." (ECF No. 1.)

2

GM initiated a voluntary compensation program to address this issue. GM admitted that these estimates were overstated by 1-2 mpg depending on the model of Class Vehicle involved and claimed that the overstatement was due to an inadvertent computer error. GM offered a compensation program for owners and lessors of affected vehicles. ("Compensation Program").

On July 7, 2016, Plaintiff asked the Court to enjoin GM from contacting unrepresented putative class members through the Compensation Program, to afford putative class members the opportunity to be represented in releasing their claims and for counsel to investigate the proposed compensation and any damages. After full briefing and oral argument, the Court declined to do so. (ECF No. 19.) At this time, the Court appointed The Miller Law Firm, P.C. and McCuneWright LLP as Interim Class Counsel. *Id.* at 18.

On August 3, 2016, a First Amended Class Action Complaint was filed with additional plaintiffs and additional causes of action. (ECF No. 22.) Plaintiff Tolmasoff elected to participate in the Compensation Program and withdrew as a plaintiff.

### B. Settlement Negotiations

The parties participated in mediation before Mediator Gene J. Esshaki and, following extensive subsequent discussions, reached a tentative class action settlement. The eligible purchasers and lessees of Class Vehicles who elected not

to participate in the Compensation Program and did not otherwise release their claims against GM are eligible to participate in the settlement set forth in this Agreement and the approximately 7,600 vehicle identification numbers of their Class Vehicles are attached as Exhibit A to the SA.

After the Parties agreed to the terms of the tentative settlement, Plaintiffs' Counsel and GM engaged in separate negotiations, with the aid of the Mediator, concerning Plaintiffs' claim for an award of attorneys' fees and reimbursement of litigation costs and expenses ("Fees and Costs"). When the Parties could not reach agreement, they submitted the Fees and Costs issue for binding arbitration to Mr. Esshaki, and acting as an arbitrator, he issued his award on February 10, 2017 in the amount of $1,300,000 (subject to Court approval). Further, in a post arbitration dispute regarding payment of mediator and notice and administration fees as set forth in Sections V-A, VI-A, and VIII-A of the SA, Class Counsel agreed to reduce their fee by $15,000.00 (fifteen-thousand dollars), for a total fee award of $1,285,000, and Defendant agreed to assume the costs of payment of the mediator and notice and administration fees as set forth in Sections VI-A and VIII-A of the SA.

### III.   THE SETTLEMENT

A. Terms of the Settlement Agreement

If finally approved, the Settlement will provide substantial benefits to the following Settlement Class: all persons within the United States who purchased or leased a retail new model year 2016 Chevrolet Traverse, Buick Enclave or GMC Acadia with a "window sticker" displaying incorrect EPA-estimated fuel economy and five-year fuel costs from an authorized GM dealer and who have *not* executed a release of any and all claims set forth in the Action in favor of GM in accordance with the Compensation Program described below and who have not otherwise released their claims against GM set forth in the Action, and who do not submit timely Requests for Exclusion. Class Members have the choice between the election of either Option 1 or Option 2, described below.

**Option 1**. Class Members can elect to receive a check payable in cash, in an amount calculated as follows: Class Members can elect to receive the difference in the EPA-required 5-year fuel cost estimates shown on the original, incorrect window stickers and on the corrected window stickers, as follows:

|  | FWD Enclave | AWD Traverse/Acadia | AWD |
|---|---|---|---|
| Incorrect combined estimated mpg | 19 | 19 | 18 |
| Corrected combined estimated mpg | 18 | 17 | 17 |

| Incorrect estimated fuel cost | $ 2,750 | $ 2,750 | $ 3,500 |
| Corrected estimated fuel cost | <u>$ 3,500</u> | <u>$ 4,250</u> | <u>$ 4,250</u> |
| Compensation | $   750 | $ 1,500 | $   750 |

Lessees under Option 1 shall be paid pro rata amounts based on the length of their leases. For example, a person leasing an AWD Traverse or Acadia for 36 months is offered three-fifths of $1,500, or $900, representing the difference in five-year EPA-estimated fuel cost during the 36-month lease term.

**Option 2**. Class Members can elect to receive a voucher good for a $2,000 credit on the purchase of any new GM Vehicle from an authorized GM dealer in the United States within 3 years of the Effective Date. A Class Member electing to receive the voucher, or a member of the Class Member's Immediate Family, may use the voucher as a $2,000 credit on the purchase price negotiated with the GM dealer, in addition to any rebates or other incentives otherwise applicable to that vehicle purchase on the date of purchase. The vouchers are otherwise non-transferable.

**Additional Relief**. If a Class Member timely and validly opts out, that Class Member may request a one-hour telephonic mediation with Defendant, to be conducted by Gene R. Esshaki. Such a mediation can result in the opt-out class member receiving less, more or nothing at all than the individual would have

received as a result of participating in the settlement. Upon request, Counsel for Plaintiffs will represent the opt-out for the telephonic mediation only.

### B. Notice to Settlement Class Members

The Settlement Administrator has mailed each Class Member, with the Class Notice, a Claim Form providing the Class Member with an option to receive the $2,000 voucher instead of receiving the check payable in cash. Class Members who wish to receive the check payable in cash will not be required to complete and return the Claim Form. Class Members who do not return the Claim Form or Class Members who do not opt out of the Settlement Class will automatically receive the check payable in cash, provided the proposed settlement is approved as provided for herein. A Class Member who wishes to receive the voucher must return the Claim Form to the Settlement Administrator indicating the election to receive the voucher by the Claims Form Deadline.

In its preliminary approval order, the Court set September 11, 2017 as the deadline for Settlement Class Members to object to, or opt out of, the Settlement. (ECF No. 36 at ¶ 24(b)-(c).)

GM shall coordinate with the Settlement Administrator to provide the checks payable in cash or vouchers to the Class Members following the Effective Date. The checks payable in cash and vouchers shall be mailed to Class Members

(excluding those who file a timely Request for Exclusion) within sixty (60) days from the Effective Date.

### C. Preliminary Approval Order and Response by Settlement Class Members

On July 19, 2017, the Court entered an order preliminarily approving the Settlement and directing that notice be executed pursuant thereto. (ECF No. 36.) As of the date of this filing, Class Counsel has received only two letters from Class Members regarding the settlement. Both letters complain about this situation, but neither letter objected to Class Counsel's fee request or to the terms of the Settlement itself.

## IV. ARGUMENT

Rule 23(h) of the Federal Rules of Civil Procedure provides that in connection with a class action settlement, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." "When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). District courts have the discretion to select the particular method of calculation, but must articulate the "reasons for 'adopting a particular methodology and the factors considered in arriving at the fee.'" *Moulton v. U.S.*

*Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (citation omitted); *see also Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016).

Pursuant to the above rule and the terms of the Settlement, Plaintiffs now apply for a total fee and expense award of $1,285,000, which accounts for both the collective attorneys' fees incurred by all law firms representing Plaintiffs (and which have amassed a collective lodestar of $1,464,546.50), and the reimbursement of $16,203.01 in cumulative litigation expenses. Plaintiffs also request Court approval of an additional $5,500 to be distributed as a $500 incentive award to each of the eleven Plaintiffs. These requests are reasonable considering the work performed and the results achieved, and are well in line with similar awards recently approved by this Court. The Settlement is the product of Class Counsels' strenuous and efficient efforts throughout the difficult phases of investigation and adversarial litigation in a case involving complex issues of fact and law. For the reasons that follow, these requests should be approved.

A.   The Value of the Settlement

In arbitration, Class Counsel took the position that the value of the Settlement is $21,600,000, as calculated below:

- $6,000,000 based upon the 7,600 class members who did not accept GM's initial offer multiplied by $750 per check that will be distributed pursuant to the Settlement;
- $600,000 based upon the 800 class members who accepted GM's initial offer after GM extended the deadline, multiplied by $750 per gift card; and

9

- $15,000,000 based on an extremely conservative estimate of the impact of the class action on GM's initial program as 15%, i.e. that the Action caused GM to pursue a robust notice program to potential class members. GM has represented that it has paid $100 million under the program to date and the participation in the program has been nearly 93%. Clearly, the robustness of this notice program is a direct response to GM's aggressive efforts to pursue participation to shrink the class size and reduce GM's total potential liability. But for the class action lawsuit, the participation in the GM Program would have been drastically reduced.  A 15% attribution to Interim Class Counsel is minimal.

Defendant disagreed with this valuation during the arbitration arguing that the litigation did not impact the acceptance rate or otherwise affect GM's compensation program. However, neither Party disputes that the Settlement has, minimally, a value of $6,000,000. With recognition of the disputed value of the Settlement, Arbitrator Gene Esshaki issued his award in the amount of $1,300,000 (subject to Court approval). Further, in a post arbitration dispute regarding payment of the mediator and notice and administration fees as set forth in Sections V-A, VI-A, and VIII-A of the SA, Class Counsel agreed to reduce their fee by $15,000 (fifteen-thousand dollars), for a total fee award of $1,285,000, and Defendant agreed to assume the costs of payment of the mediator and notice and administration fees as set forth in sections VI-A and VIII-A of the SA.

Defendant claims that prior to the filing of the lawsuit, it had undertaken steps to initiate the voluntary program. While GM was the architect of its program, Class Counsel's lawsuit and challenge increased GM's achievement of an extraordinary high rate of claims. So, whether viewed as good corporate

10

citizenship (as claimed by GM) or a preemptive strike, Interim Class Counsel's efforts for the class must be compensated. The filed lawsuit virtually guaranteed that GM would make an exceptionally aggressive effort to exponentially increase participation. Indeed, Interim Class Counsel fielded over 1,000 inquiries from GM's customers – almost entirely generated by Defendant's website; and objectively advised class members regarding their options. The lawsuit conferred legitimacy to Defendant's program – thus enhancing participation.

      B.  <u>The Fee Request Should Be Evaluated Under the Percentage-of-the-Fund Theory</u>

A court has available "two methods for calculating [common benefit] attorney's fees: the lodestar and the percentage-of-the-fund." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. Appx. 496, 498 (6th Cir. 2011). "District courts have discretion 'to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.'" *Rawlings*, 9 F.3d at 516. "The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." *Id.*

The percentage of the fund method is preferable here. "The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes

reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Rawlings*, 9 F.3d at 516. The value of the benefits to the class is conservatively $6 million. Plaintiffs' $1.285 million fee request is approximately 20% of the total value of the settlement. Higher percentages are routinely approved by courts as a reasonable percent of the value created. In addition, "the percentage-of-the-fund method avoids the need for highly-detailed examinations and calculations required when fact-checking the lodestar." *See In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1010 (N.D. Ohio 2016) (citing *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 761 (S.D. Ohio 2007) ("The lodestar method has been rightly criticized for . . . burdening district judges with the tedious task of auditing time records.")). However, "most courts adopting the percentage approach [also] conduct a 'lodestar cross-check' to prevent counsel from receiving a windfall. The cross-check requires the Court to calculate the lodestar multiplier in the case and ensure that the fee award is still roughly aligned with the amount of work the attorneys contributed." *In re Cardinal Health*, 528 F. Supp. 2d at 764.

While the requested fee is reasonable regardless of the methodology employed, Plaintiffs respectfully submit that the Court should use the percentage of the fund method in this case.

12

C. Class Counsel's Request is Reasonable and Falls Squarely within the Range of Awards in Similar Class Action Settlements

[T]hroughout the Sixth Circuit, attorneys' fees in class actions have ranged from 20%–50%." *Manners v. American General Life Ins. Co.*, No. 98-0266, 1999 WL 33581944 at *29 (M.D. Tenn. Aug.11, 1999)[2]; *see also In re Nat. Century Fin. Enterprises, Inc. Inv. Litig.*, No. 2:03-MD-1565, 2009 WL 1473975, at *3 (S.D. Ohio May 27, 2009) (citing *Manners* and finding 30% of common fund reasonable); *Chesher v. Neyer*, No. 1:01-cv-566, 2007 WL 4553908, at *2 (S.D. Ohio Dec. 19, 2007) (noting that, in the Sixth Circuit, "the percentage awarded typically rang[es] from 20 to 50 percent of the common fund").

Class Counsel requests that the Court award them $1,285,000, which represents approximately 20% of the total value of the Settlement and falls well within the range of fee petitions routinely granted by the courts in this Circuit. *See, e.g., Hainey v. Parrott*, No. 1:02-cv-733, 2007 WL 3308027, at *3 (S.D. Ohio Nov. 6, 2007) (approving award of attorneys' fees of 30% of the common fund); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003) (finding of 17% of the settlement fund as fair and reasonable); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 803 (N.D. Ohio 2010) (recognizing that 26.4% is well within the acceptable range for a fee award in a class action); *Thacker v.*

---

[2] A compilation of the unpublished cases cited herein is attached as Exhibit 1.

13

*Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010), a*ff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) (finding 30% attorney fee reasonable and declining to reduce fee to 21% because it "would result in an award of attorneys' fees that is less than what is typically awarded in similar class actions. Such a result is unwarranted in light of Class Counsel's successful efforts in the face of the significant risks in prosecuting this litigation."); *Clevenger v. Dillards, Inc.*, No. C-1-02-558, 2007 WL 764291, at *3 (S.D. Ohio Mar. 9, 2007) (awarding 29% of settlement fund); *In re CMS Energy ERISA Litig.*, No. 02–72834, 2006 WL 2109499, at *3 (E.D. Mich. June 27, 2006) (awarding attorneys' fees in the amount of 28.5% of the cash settlement fund); *In re Southern Ohio Corr. Facility*, 173 F.R.D. 205, 218 (S.D. Ohio 1997), *rev'd on other grounds*, 24 F. App'x 520 (6th Cir. 2001) (requested amount of 34% of the total amount of the common fund was within the range of reasonableness).

    D. The *Ramey* Factors Support Class Counsel's Request

    In addition to determining the method of calculating the fee award, the court is tasked with ensuring the fee awarded is "reasonable under the circumstances." *Moulton*, 581 F.3d at 352. The Sixth Circuit has promulgated a series of non-exhaustive factors for district courts to consider in evaluating the reasonableness of the requested fee:

> (1) the value of the benefit rendered to the plaintiff class;
> (2) the value of the services on an hourly basis; (3)
> whether the services were undertaken on a contingent fee
> basis; (4) society's stake in rewarding attorneys who
> produce such benefits in order to maintain an incentive to
> others; (5) the complexity of the litigation; and (6) the
> professional skill and standing of counsel involved on
> both sides.

*Id.* (quoting *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

### 1. Value of the benefit rendered to Plaintiffs and the Settlement Class

The substantial value the Settlement provides to the Class is the most important factor, and weighs heavily in favor of granting Plaintiffs' fee request. *Godec v. Bayer Corp.*, No. 1:10-cv-224, 2013 WL 1089549, at *3 (N.D. Ohio Mar. 14, 2013); *see also In re Cardinal Health Inc. Securities Litigation*, 528 F. Supp. 2d 752, 756 (S.D. Ohio 2007); *Basile v. Merrill Lynch, Pierce, Fenner & Smith*, 640 F. Supp. 697, 700 (S.D. Ohio 1986).

As set forth above, the value of the Settlement is substantial. It provides for reimbursement for the full difference between the actual and incorrect EPA estimated mpg fuel economy initially on the window sticker of the Class Vehicles. If certain Class Members are unhappy with the amount GM offers them, they can exclude themselves and engage in the one hour telephonic mediation with Class

Counsel representing them, or retain their own attorney and pursue a separate action. The Settlement relief will compensate Class Members for the harm they suffered when purchasing the Class Vehicles.

In addition, after a successful Notice campaign, Class Counsel has received only two letters from Class Members related to the Settlement. Both letters complain about this situation, but neither letter objected to Class Counsel's fee request or to the terms of the Settlement itself, further demonstrating the value Class Members believe the Settlement will provide. *See Godec*, 2013 WL 1089549, at *3 ("[N]o objections were levied to proposed settlement. Given the constraints of the action—compensating retail consumers who purchased vitamin bottles years ago—this factor weighs in favor of approval.).

### 2.  *Value of the services on an hourly basis*

Under this factor, "the Court must examine the value of the attorneys' services on an hourly basis by performing the lodestar cross-check." *In re Cardinal Health*, 528 F. Supp. 2d at 767.

> The cross-check requires the Court to calculate the lodestar multiplier in the case and ensure that the fee award is still roughly aligned with the amount of work the attorneys contributed. The lodestar cross-check does not supplant the court's detailed inquiry into the attorneys' skill and efficiency in recovering the settlement, but instead acts as simply another factor required by the Sixth Circuit and many others to ensure that attorneys' fees accurately reflect the work of counsel.

16

*Id.* (citation omitted).

To calculate the lodestar, "the proven number of hours reasonably expended on the litigation [are multiplied] by a reasonable hourly rate." *Lonardo*, 706 F. Supp. 2d at 793. In addition, the lodestar figure is "typically further multiplied by a 'multiplier' to account for the cost and risk inherent in advancing fees, the complexity of the case, and the size of the recovery." *Newberg on Class Actions*, at § 12.55 (3d ed.); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "In contrast to employing the lodestar method in full, when using a lodestar cross-check, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *In re Cardinal Health*, 528 F. Supp. 2d at 767 (citing *In re WorldCom Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005)).

Class Counsel billed their time at their current billing rates charged to their clients, and all of the billable time was necessary to secure the results obtained. The following represents Class Counsel's fees and costs in this matter from inception until August 30, 2017.

The Miller Law Firm billed 1,216.05 hours at a total lodestar of $747,314.00. The firm's total expenses are $7,927.71. *See* Declaration of E. Powell Miller ("Miller Dec.") at ¶¶ 5, 8.

The law firm of McCune Wright Arevalo billed 1,108.9 hours at a total lodestar of $717,232.50. The firm's total expenses are $8,275.30. *See* Declaration of Joseph G. Sauder ("Sauder Dec.") at ¶¶ 5, 8.

The combined lodestar of Plaintiffs' Counsel is $1,464,546.50. They have incurred $16,203.01 in unreimbursed expenses, and have billed over 2,300 contingency fee hours in this litigation. All of these fees and expenses will be paid from the $1,285,000 requested.

Courts within the Sixth Circuit regularly find multipliers of one to four times counsel's lodestar fair and reasonable. *See Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (finding 3.06 multiplier "very acceptable" and collecting cases awarding multipliers between 3 and 8.74); *In re Cardinal Health*, 528 F. Supp. 2d at 767 (typical lodestar in securities class actions ranges from 1.3 to 4.5); *Newberg on Class Action* § 14.6 (4th ed.) ("Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied."). Here, Class Counsel's 0.88 multiplier is actually a negative and is thus reasonable, and should be approved. *See Walls v. JPMorgan Chase Bank, N.A.*, No. 11-cv-673, 2016 WL 6078297, at *6 (W.D. Ky. Oct. 14, 2016) (finding a 0.83 multiplier under lodestar cross-check to be reasonable).

### 3.  Whether the services were undertaken on a contingent fee basis

Class Counsel prosecuted this litigation on a wholly contingent fee basis. Class Counsel had no guarantee they would be compensated for their time and substantial out-of-pocket expenses. *Lowther*, 2012 WL 6676131, at *3 (finding contingent fee factor weighed in favor of approval of requested fee because plaintiffs' counsel "assumed a substantial risk of nonpayment"). Thus, this factor also supports Class Counsel's request.

### 4. *Society's stake in rewarding attorneys who produce benefits.*

Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling small claimants to pool their claims and resources. *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001); *see also Lonardo*, 706 F. Supp. 2d at 795 ("As noted above, the Court must ensure that Class Counsel is fairly compensated in order to facilitate the goal of class actions—*i.e.*, to provide a vehicle for collective action to pursue redress for tortious conduct that it is not feasible for an individual litigant to pursue."). Private lawsuits, such as this, help effectuate the underlying public policy goals of the various state consumer protection statutes alleged in the First Amended Complaint. *See, e.g.*, *Lowther*, 2012 WL 6676131, at *3 (observing private lawsuits helped effectuate remedial purposes of federal pension laws). The Settlement confers substantial benefits on Settlement Class Members.

### 5. *Complexity of the litigation.*

This complex class action litigation lasted over a year, and Class Counsel's substantial litigation efforts (including adversarial motion practice, a mediation, and numerous telephone conferences) produced a successful conclusion. Moreover, GM has maintained throughout the litigation that it voluntarily corrected the mpg disparity in the Class Vehicles and its previous offer was the extent of its liability in this litigation, regardless of whether the Class Member accepted or rejected the offer. If the litigation were to move forward, whether GM would be required to extend another offer to the approximately 7,600 Class Members is an issue GM would vigorously oppose and presents substantial risk to the Settlement Class. Moreover, litigating the claims of the putative Class would require substantial additional preparation, including significant, additional time-consuming and expensive discovery, briefing and arguing class certification and summary judgment, formal expert discovery, and, if the case were to proceed to trial, extensive pre-trial briefing, trial preparation, participation in trial, the determination of how to allocate and distribute damages, and, potentially, post-trial briefing and resulting appeals.

Thus, the complexity of the case supports Class Counsel's request. *See, e.g.*, *Dick v. Sprint Comms. Co. L.P.*, 297 F.R.D. 283, 295, 301 (W.D. Ky. 2014) (observing that issues in litigation were not clearly in the class members' favor and that "resolution of such matters would have presented a significant risk to the class,

20

who would be subject to the continued fees and costs associated with ongoing litigation"); *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *3 (S.D. Ohio Dec. 21, 2012) (observing case involved numerous difficult legal and factual issues that supported counsel's fee request).

*6. Professional skill and standing of counsel involved on both sides.*

As previously acknowledged by the Court both when appointing Interim Class Counsel (ECF No. 19) and Class Counsel (ECF No. 36), Class Counsel are nationally recognized in class action litigation and have settled numerous class actions that have conferred substantial benefits on consumers. *See, e.g.*, *Lowther*, 2012 WL 6676131 at *3 ("The settlement represents a favorable result for the Class, attributable to the diligence, determination, hard work, and reputation of Plaintiffs' counsel."); *Godec*, 2013 WL 1089549 at *3 ("This Court finds that there is little question that its efforts through the duration of this litigation was of a quality exceeding the requested fees."). In addition, counsel for GM was represented by sophisticated counsel at a large international law firm headquartered in Chicago who vigorously contested Plaintiffs' allegations. *Lowther*, 2012 WL 6676131 at *4 (The action was vigorously contested, and Defendant was represented by highly regarded lawyers. The quality of opposing counsel is important in assessing the quality of the services rendered by Plaintiffs' counsel."). Thus, this factor also strongly supports Class Counsel's request.

E.  Class Counsel's Expenses Should Be Approved

There is little question that "class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003); *see also Dick*, 297 F.R.D. at 283 (same). In determining whether the requested expenses are compensable, the Court has considered "whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535.

In this case, Class Counsel have incurred $16,203.01 in properly documented expenses for the common benefit of Settlement Class Members. The requested expenses will be paid from the total $1,285,000 fee and expense request. Class Counsel incurred these out-of-pocket expenses without assurance they would ever be repaid. The requested amount is reasonable and Class Counsel respectfully requests the Court's approval.

F.  The Requested Incentive Awards Should Be Approved

The service provided by the Plaintiffs in this action should not go without financial recognition. While service as a representative plaintiff is not a profit-making position, it is appropriate to make modest payments to recognize the

22

services that such plaintiffs perform in successful class litigation. *See Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ("Numerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class."); *see also Lonardo*, 706 F. Supp. 2d at 787 ("Courts within the Sixth Circuit . . . recognize that, in common fund cases . . . where the settlement agreement provides for incentive awards, class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled by virtue of class membership alone."); *In re Polyurethane Foam*, 135 F. Supp. 3d 679, 694 (N.D. Ohio 2015) ("[d]istrict courts in this Circuit routinely grant incentive awards to representative plaintiffs in antitrust matters, when the representative plaintiff actively participates in the litigation").

The Settlement Agreement here recognizes this principle by providing for incentive awards in the amount of $500 to each of the eleven Plaintiffs. These Plaintiffs were the principal catalysts in helping achieve this result for the Class. They participated in numerous meetings with their attorneys, searched for and produced documents relevant to their claims in the litigation, and stayed abreast of significant developments in the case by communicating with Class Counsel. Incentive awards are therefore appropriate here and well within a reasonable range.

*See, e.g.*, *In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *24-25 (N.D. Ohio Sept. 23, 2016) (approving $4,000 incentive award to each of the 29 class representatives).

## V.   CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court grant Plaintiffs' Unopposed Motion for Attorneys' Fees, Expenses and Incentive Awards.

DATED: September 1, 2017                      Respectfully submitted:

BY:   */s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon Almonrode (P33938)
**THE MILLER LAW FIRM, P.C.**
950 W University Drive, Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com

Joseph G. Sauder*
Matthew D. Schelkopf*
Joseph B. Kenney*
**MCCUNE WRIGHT AREVALO LLP**
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: (909) 557-1250
jgs@mccunewright.com
mds@mccunewright.com
jbk@mccunewright.com

Richard D. McCune*
David C. Wright*
Elaine S. Kusel

24

**MᴄCᴜɴᴇ Wʀɪɢʜᴛ Aʀᴇᴠᴀʟᴏ LLP**
3281 E Guasti Road
Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275
rdm@mccunewright.com
dcw@mccunewright.com
esk@mccunewright.com

*Attorneys for Plaintiffs and the Putative Class and Proposed Class Counsel*

25

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| TIFFANY ELLIS, STEPHEN TYSON, GAIL BRALEY, DAVID LYALL, LINDA KEMP, SYLVESTER TIBBITS, LUCAS CRANOR, MARY CRAWFORD, IRENE STAGER, NATASHA FORD, and GARRY WILLET, on behalf of themselves and all others similarly situated, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 2:16-cv-11747-CGS-APP<br><br>**CLASS ACTION**<br><br>Hon. George Caram Steeh |
| Plaintiffs, | )<br>) | Magistrate Judge Anthony P. Patti |
| v. | )<br>) | |
| GENERAL MOTORS, LLC, | )<br>) | |
| Defendant | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2017, I electronically filed the foregoing document with the Clerk of the Court using the ECF system that will send notification of such filing to all attorneys of record.

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
**MILLER LAW FIRM, P.C.**
950 W University Drive, Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
epm@millerlawpc.com