# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| TIFFANY ELLIS, STEPHEN TYSON, GAIL BRALEY, DAVID LYALL, LINDA KEMP, SYLVESTER TIBBITS, LUCAS CRANOR, MARY CRAWFORD, IRENE STAGER, NATASHA FORD, and GARRY WILLET, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) | Case No.: 2:16-cv-11747-CGS-APP |
| | ) | **CLASS ACTION** |
| | ) | Hon. George Caram Steeh |
| | ) | Magistrate Judge Anthony P. Patti |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| General Motors, LLC, | ) ) | |
| Defendant | ) ) | |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT

**PLEASE TAKE NOTICE** that for the reasons set forth in the attached Memorandum in Support of this Motion, Named Plaintiffs, Tiffany Ellis, Stephen Tyson, Gail Braley, David Lyall, Linda Kemp, Sylvester Tibbits, Lucas Cranor, Mary Crawford, Irene Stager, Natasha Ford, And Garry Willet, individually and on behalf of the class, submit this Unopposed Motion for Final Approval of the Proposed Class Action Settlement, and respectfully request that the Court enter the Proposed Final Approval Order.

DATED: October 23, 2017                          Respectfully submitted:

BY:   /s/ E. Powell Miller
      E. Powell Miller (P39487)
      Sharon Almonrode (P33938)
      **MILLER LAW FIRM, P.C.**
      950 W University Drive, Suite 300
      Rochester, Michigan 48307
      Telephone: (248) 841-2200
      epm@millerlawpc.com
      ssa@millerlawpc.com

      Joseph G. Sauder
      Matthew D. Schelkopf
      Joseph B. Kenney
      **MCCUNE WRIGHT AREVALO LLP**
      555 Lancaster Avenue
      Berwyn, Pennsylvania 19312
      Telephone: (909) 557-1250
      jgs@mccunewright.com
      mds@mccunewright.com
      jbk@mccunewright.com

      Richard D. McCune
      David C. Wright
      Elaine S. Kusel
      **MCCUNE WRIGHT AREVALO LLP**
      3281 E Guasti Road
      Suite 100
      Ontario, California 91761
      Telephone: (909) 557-1250
      Facsimile: (909) 557-1275
      rdm@mccunewright.com
      dcw@mccunewright.com
      esk@mccunewright.com

      ***Attorneys for Plaintiff and the***
      ***Putative Class and Proposed Class***
      ***Counsel***

2

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| TIFFANY ELLIS, STEPHEN TYSON, GAIL BRALEY, DAVID LYALL, LINDA KEMP, SYLVESTER TIBBITS, LUCAS CRANOR, MARY CRAWFORD, IRENE STAGER, NATASHA FORD, and GARRY WILLET, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) | Case No.: 2:16-cv-11747-CGS-APP |
| | ) | **CLASS ACTION** |
| | ) | |
| | ) | Hon. George Caram Steeh |
| | ) | |
| Plaintiffs, | ) | Magistrate Judge Anthony P. Patti |
| | ) | |
| v. | ) ) | |
| | ) | |
| General Motors, LLC, | ) ) | |
| Defendant | ) | |

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT

---

# **TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................1

II.  FACTUAL BACKGROUND ................................................................2

   A.  History of the Litigation ................................................................2

   B.  Settlement Negotiations ................................................................3

   C.  The Settlement Agreement ............................................................4

   D.  Notice to Settlement Class Members ............................................6

   E.  Separate Motion for Attorneys' Fees and Incentive Awards .......7

III.  ARGUMENT .......................................................................................8

   A.  The Settlement Warrants Final Approval…………………………8

   B.  The Settlement is Fair, Reasonable, and Adequate.....................11

     1. The risk of fraud or collusion……………………………………12

     2. The complexity, expense and likely duration of the litigation………......14

     3. The amount of discovery engaged in by the parties…………………..15

     4. The likelihood of success on the merits………………………………16

     5. The opinions of class counsel and class representatives……………...17

     6. The reaction of absent class members……………………………...........18

     7. The public interest……………………………………………………....19

   C.  The Settlement Meets the Requirements of Rule 23....................19

     1. Numerosity………………………………………………………...21

     2. Commonality………………………………………………………...22

     3. Typicality………………………………………………………………23

     4. Adequacy……………………………………………………..………24

     5. The requirements of Rule 23(b)(3) are met…………………………26

        a. Predominance…………………………………...……………26

        b. Superiority………………………………….……………28

D. Interim Lead Counsel Should be Appointed Class Counsel………..………..30

E. The Notice Program Satisfied Due Process………...……………………..…….31

IV.   CONCLUSION ...............................................................................................33

## <u>CONCISE STATEMENT OF ISSUE PRESENTED</u>

1. Whether this Court should enter an order granting final approval of the proposed Settlement and certifying the proposed Settlement Class in this action?

       Plaintiffs' Answer:     Yes

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................ 10, 11, 20, 21, 29

*Augustin v. Jablonsky*,
  461 F.3d 219 (2d Cir. 2006) ...................................................................29

*Bacon v. Honda of America Mfg., Inc.*,
  370 F.3d 565 (6th Cir. 2004) ..................................................................22

*Bailey v. Great Lakes Canning*, Inc.,
  908 F.2d 38 (6th Cir. 1990) ....................................................................11

*Beattie v. CenturyTel, Inc.*,
  511 F.3d 554 (6th Cir. 2007) ..................................................................23

*Chandler v. Southwest Jeep-Eagle*,
  162 F.R.D. 302 (N.D. Ill.1995) ..............................................................27

*Daffin v. Ford Motor Co*.,
  458 F.3d 549 (6th Cir. 2006) ....................................................... *passim*

*Detroit Police Officers Ass'n v. Young*,
  920 F. Supp. 755 (E.D. Mich. 1995) .....................................................11

*Galoski v. Applica Consumer Prod.*,
  309 F.R.D. 419 (N.D. Ohio 2015) .................................................... 27, 28

*Gooch v. Life Investors. Ins. Co. of Am.*,
  672 F.3d 402 (6th Cir. 2012)) .................................................................25

*Griffin v. Flagstar Bancorp, Inc.*,
  No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ........ 19, 22

*Henderson v. Volvo Cars of N. Am., LLC*,
  No. 09-4146 (CCC), 2013 WL 1192479 (D.N.J. Mar. 22, 2013) ....................28

*In re Am. Med. Sys., Inc.*,
 75 F.3d at 1069 (6th Cir.1996) ............................................................ 24, 25, 26

*In re Cardizem CD Antitrust Litig.*,
 200 F.R.D. 297 (E.D. Mich. 2001) ............................................................ 19, 27

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
 No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009)...............28

*In re Flonase Antitrust Litig.*,
 291 F.R.D. 93 (E.D. Pa. 2013)………………………………………....…10

*In re Foundry Resins Antitrust Litig.*,
 242 F.R.D. 393 (S.D. Ohio May 2007) ..................................................... 22, 27

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
 726 F.2d 1075 (6th Cir. 1984) ..........................................................................16

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
 204 F.R.D. 330 (N.D. Ohio 2001) ............................................................ 11, 21

*In re Packaged Ice Antitrust Litigation*,
 No. 08-MDL-01952, 2012 WL 5493613 (E.D. Mich. Nov. 13, 2012).........8, 20

*In re Potash Antitrust Litig.*,
 159 F.R.D. 682 (D. Minn. 1995) ......................................................................27

*In re Prandin Direct Purchaser Antitrust Litigation*,
 No. 2:10-cv-12141, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015)………18

*In re Teletronics*,
 168 F.R.D. 203 (S.D. Ohio 1996).....................................................................23

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
 722 F.3d 838 (6th Cir. 2013) .................................................................... 10, 27

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
 396 F.3d 922 (8th Cir. 2005) ...........................................................................14

*In Re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*,
 No. 1:08-WP-65000, 2016 WL 5338012 at *6 ........................................ *passim*

*International Union v. Ford Motor Co.*,

    Nos. 05-74730, 06-10331, 2006 WL 1984363 (E.D. Mich. July 13, 2006)..9, 22

*IUE-CWA v. General Motors Corp.*,

    238 F.R.D. 583 (E.D. Mich. 2006)...............................................................8, 24

*Knuckles v. Elliott*,

    No. 15-10175, 2016 WL 3912816 (E.D. Mich. July 20, 2016)..............31

*Leonhardt v. ArvinMeritor, Inc.*,

    581 F. Supp. 2d 818 (E.D. Mich. 2008) ..................................................... 13, 14

*Olden v. Gardner*,

    294 F. App'x 210 (6th Cir. 2008) ....................................................................15

*Rankin v. Rots*,

    No. 02-cv-71045, 2006 WL 1876538 (E.D. Mich. June 27, 2006) ...................9

*Rikos v. Procter & Gamble Co.*,

    799 F.3d 497 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1493 (2016) ................22

*Senter v. General Motors Corp.*,

    532 F.2d 511 (6th Cir. 1976) ..........................................................................28

*Sheick v. Automotive Component Carrier LLC*,

    No. 09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ......................8, 9

*Sims v. Pfizer, Inc.*,

    No. 1:10-cv-10743, 2016 WL 772545 (E.D. Mich. Feb. 24, 2016).................12

*Stout v. J.D. Byrider*,

    228 F.3d 709 (6th Cir. 2000) ..........................................................................25

*Sullivan v. DB Invs., Inc.*,

    667 F.3d 273 (3d Cir. 2011) ...........................................................................28

*Tardiff v. Knox County*,

    365 F.3d 1 (1st Cir. 2004) ...............................................................................29

*Taylor v. CSW Transp. Inc.*,

    264 F.R.D. 281 (N.D. Ohio 2007)...................................................................24

*UAW v. General Motors Corp.*,
     497 F.3d 615 (6th Cir. 2007)................................................................. 12, 13, 16

*Vassalle v. Midland Funding LLC*,
     708 F.3d 747 (6th Cir. 2013) .................................................................. 12, 25

*Wal-Mart Stores, Inc. v. Dukes*,
     564 U.S. 338 (2011) ..............................................................................22

*Williams v. Vukovich*,
     720 F.2d 909 (6th Cir. 1983) .................................................................. 11, 12

## Other Authorities

4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41
     (4th ed. 2005)..........................................................................................9

## Rules

Fed R. Civ. P. 23(a)……………………………………………………...10, 19, 20, 30

Fed. R. Civ. P. 23(a)(1)........................................................................ 21, 22

Fed. R. Civ. P. 23(a)(2)……………………………………………………...22

Fed. R. Civ. P. 23(a)(3) ........................................................................23

Fed. R. Civ. P. 23(a)(4).........................................................................24

Fed. R. Civ. P. 23(b)…………………………………………………10, 20, 21

Fed. R. CIV. P. 23(b)(3) ........................................................... *passim*

Fed. R. Civ. P. 23(c)(1)(B)…………………………………………………….21

Fed. R. Civ. P. 23(c)(2)(B). ................................................................. 10, 31

Fed. R. Civ. P. 23(e)……………………………………………………...1, 9

Fed. R. Civ. P. 23(e)(2) ........................................................................10

Fed. R. Civ. P. 23(e)(5)........................................................................10

Fed. R. Civ. P. 23(g) ...........................................................................21

## I.    INTRODUCTION

Plaintiffs, on behalf of themselves and all others similarly situated, respectfully move for final approval of the Settlement preliminarily approved by the Court on July 19, 2017. (ECF No. 36).  For the reasons set forth below, the Settlement is fair, reasonable and adequate, and should be approved under Federal Rule of Civil Procedure 23(e).

This litigation concerns the marketing and sale of the model year 2016 Chevrolet Traverse, Buick Enclave, and GMC Acadia vehicles. Plaintiffs allege that Defendant General Motors LLC ("GM") violated state consumer protection laws, engaged in fraud and misrepresentation and was unjustly enriched by overstating the EPA-estimated fuel economy ("mpg") ratings and their EPA-estimated 5-year fuel cost that federal law required to be displayed on the Class Vehicles "window stickers." GM denies all of Plaintiffs' allegations.

Following extensive discussions and mediation before Mediator Gene J. Esshaki, the Parties reached a tentative class action settlement, subject to approval of the Court.  Both during and between mediation sessions, the parties engaged in extensive arm's-length negotiations that produced the Settlement, which makes available to all affected Class members monetary and other valuable relief while avoiding the risk of continued and uncertain litigation.

The Class contains approximately 7,622 vehicles. Only 2 Class members wish to be excluded from the Settlement and there have been 0 objections. *See* Declaration of Michelle J. Kopperud ("Kopperud Decl.") ¶¶ 12, 13. The extremely favorable Class member response strongly supports settlement approval.

As such, Plaintiffs respectfully request that the Court enter an Order granting final approval of the Settlement and granting class certification for settlement purposes.

## II.    FACTUAL BACKGROUND

### A. <u>History of the Litigation</u>

Plaintiff Sean Tolmasoff commenced this Action and brought causes of action against GM alleging violations of state consumer protection laws, and that GM engaged in fraud and misrepresentation and was unjustly enriched by overstating the EPA-estimated fuel economy ("mpg") ratings and their EPA-estimated 5-year fuel cost that federal law required to be displayed on the Class Vehicles "window stickers." (ECF No. 1.)

GM admitted that these estimates were inadvertently overstated by 1-2 mpg depending on the model of Class Vehicle involved and claimed that the overstatement was due to an inadvertent computer error. GM offered a compensation program for owners and lessors of affected vehicles. ("Compensation Program").

2

On June 7, 2016, Plaintiff asked the Court to enjoin GM from contacting unrepresented putative class members through the Compensation Program to afford putative class members the opportunity to be represented in releasing their claims and for counsel to investigate the proposed compensation and any damages. After full briefing and oral argument, the Court declined to do so. (ECF No. 19). At that time, the Court appointed The Miller Law Firm, P.C. and McCune Wright Arevalo LLP as Interim Class Counsel. *Id.* at 18.

On August 3, 2016, a First Amended Class Action Complaint was filed with additional plaintiffs and additional causes of action. (ECF No. 22). Plaintiff Tolmasoff elected to participate in the Compensation Program and withdrew as a plaintiff.

**B. Settlement Negotiations**

The parties participated in mediation before Mediator Gene J. Esshaki and, following extensive subsequent discussions, reached a tentative class action settlement. The eligible purchasers and lessees of Class Vehicles who elected not to participate in the Compensation Program and did not otherwise release their claims against GM are eligible to participate in the settlement set forth in this Agreement and 7,622 vehicle identification numbers of their Class Vehicles are attached as Exhibit B to the SA. (ECF No. 34-5).

After the Parties agreed to the terms of the tentative settlement, Plaintiffs'
Counsel and GM engaged in separate negotiations, with the aid of the Mediator,
concerning Plaintiffs' claim for an award of attorneys' fees and reimbursement of
litigation costs and expenses ("Fees and Costs"). When the Parties could not reach
agreement, they submitted the Fees and Costs issue for binding arbitration to Mr.
Esshaki, and acting as an arbitrator, he issued his award on February 10, 2017 in
the amount of $1,300,000 (subject to Court approval). Further, in a post arbitration
dispute regarding payment of the mediator and notice and administration fees as
set forth in Sections V-A, VI-A, and VIII-A of the SA (ECF No. 34-2), Class
Counsel agreed to reduce their fee by $15,000.00 (fifteen-thousand dollars) and
Defendant agreed to assume the costs of payment of the mediator and notice and
administration fees as set forth in Sections VI-A and VIII-A of the SA.

### C. **The Settlement Agreement**

If approved, the Settlement will provide substantial benefits to the following
Settlement Class as defined in Exhibit A to the Settlement Agreement: all persons
within the United States who purchased or leased a retail new model year 2016
Chevrolet Traverse, Buick Enclave or GMC Acadia with a "window sticker"
displaying incorrect EPA-estimated fuel economy and five-year fuel costs from an
authorized GM dealer and who have *not* executed a release of any and all claims
set forth in the Action in favor of GM in accordance with the Compensation

Program described below and who have not otherwise released their claims against GM set forth in the Action, and who do not submit timely Requests for Exclusion. Class Members have the choice between the election of either Option 1 or Option 2, described below.

**Option 1**. Class Members can elect to receive a check payable in cash, in an amount calculated as follows: Class Members can elect to receive the difference in the EPA-required 5-year fuel cost estimates shown on the original, incorrect window stickers and on the corrected window stickers, as follows:

|  | FWD | AWD Traverse/Acadia | AWD |
|---|---|---|---|
| Enclave |  |  |  |
| Incorrect combined estimated mpg | 19 | 19 | 18 |
| Corrected combined estimated mpg | 18 | 17 | 17 |
| Incorrect estimated fuel cost | $ 2,750 | $ 2,750 | $ 3,500 |
| Corrected estimated fuel cost | $ 3,500 | $ 4,250 | $ 4,250 |
| Compensation | $   750 | $ 1,500 | $   750 |

Lessees under Option 1 shall be paid pro rata amounts based on the length of their leases. For example, a person leasing an AWD Traverse or Acadia for 36 months is offered three-fifths of $1,500, or $900, representing the difference in five-year EPA-estimated fuel cost during the 36-month lease term.

5

**Option 2**. Class Members can elect to receive a voucher good for a $2,000 credit on the purchase of any new GM Vehicle from an authorized GM dealer in the United States within 3 years of the Effective Date. A Class Member electing to receive the voucher, or a member of the Class Member's Immediate Family, may use the voucher as a $2,000 credit on the purchase price negotiated with the GM dealer, in addition to any rebates or other incentives otherwise applicable to that vehicle purchase on the date of purchase. The vouchers are otherwise non-transferable.

**Additional Relief**. If a Class Member timely and validly opts out, that Class Member may request a one-hour telephonic mediation with Defendant, to be conducted by Gene R. Esshaki. Such a mediation can result in the opt-out class member receiving less, more or nothing at all than the individual would have received as a result of participating in the settlement. Upon request, Counsel for Plaintiffs will represent the opt-out for the telephonic mediation only.

### D. Notice to Settlement Class Members

Pursuant to the Notice Plan approved by the Court, the nationally recognized settlement and notice administrator Analytics Consulting LLC mailed out 7,622 notices and claim forms to Class members for whom Defendant had contact information. *See* Kopperud Decl. ¶ 8. Class Members who wished to receive the check payable in cash have not been required to complete and return the Claim

6

Form. Class Members who have not returned the Claim Form or Class Members who have not opted out of the Settlement Class will automatically receive the check payable in cash, provided the proposed Settlement is approved as provided for herein. A Class Member who wishes to receive the voucher must return the Claim Form to the Settlement Administrator indicating the election to receive the voucher by the Claims Form Deadline.

The notices directed Settlement Class members to an email address and toll-free phone number for additional information and claims forms. Based on Class Member and other input, Analytics Consulting and Class Counsel worked to improve responses and Class Member contact. *See* Kopperud Decl. ¶¶ 6-11.

### E. Separate Motion for Attorneys' Fees and Incentive Awards

GM did not oppose Class Counsel's application for attorneys' fees, costs and expenses to be paid by GM as that total does not exceed one million three hundred thousand dollars ($1,300,000), and Class Counsel did not seek attorneys' fees, costs and expenses from the Court that exceed that sum. Further, in a post arbitration dispute regarding payment of mediator and notice and administration fees as set forth in Sections II-J, VI-A, and VIII-A of the SA, Class Counsel agreed to reduce their fee by $15,000.00 (fifteen-thousand dollars) and Defendant agreed to assume the costs of payment of the mediator and notice and administration fees as set forth in Sections VI-A and VIII-A of the SA.

GM also did not oppose Plaintiffs' application for an incentive award to each of the Plaintiffs ("Incentive Award") to be paid by GM provided the Incentive Award to each Plaintiff did not exceed $500.

## III.   ARGUMENT

### A. <u>The Settlement Warrants Final Approval</u>

The Sixth Circuit and this District have "recognized that the law favors the settlement of class action lawsuits." *In re Packaged Ice Antitrust Litigation*, No. 08-MDL-01952, 2012 WL 5493613, at *4 (E.D. Mich. Nov. 13, 2012) (citing *IUE-CWA v. General Motors. Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006) (noting "the general federal policy favoring the settlement of class actions"). The consideration and approval of a proposed class settlement is left to the sound discretion of the district court and the district court "should approve a class settlement if, following a hearing, the court determines that the settlement is 'fair, reasonable, and adequate.'" *Id.* (quoting *IUE-CWA*, 238 F.R.D. at 593, 594). "Given that class settlements are favored, the role of the district court is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole, is fair, reasonable, and adequate to all concerned." *Id.* (citing *IUE-CWA*, 238 F.R.D. at 594); *see also Sheick v. Automotive Component Carrier LLC*, No. 09-14429, 2010 WL 4136958, at *14

(E.D. Mich. Oct. 18, 2010) ("In assessing a proposed settlement, the district judge may not substitute his or her judgment for that of the litigants and their counsel and should approve a class settlement if, following a hearing, the court determines that the settlement is fair, reasonable, and adequate."); *International Union v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363, at *21 (E.D. Mich. July 13, 2006) ("Settlement embodies a bargained give and take between the litigants that is presumptively valid about which the Court should not substitute its judgment for that of the parties.").

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2005) ("*Newberg*") (collecting cases); *cf. Rankin v. Rots*, No. 02-cv-71045, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006) ("[T]he only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.") (internal quotation marks omitted).

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The court's approval process includes several essential tasks. *See In re: Whirlpool Corp. Front-loading Washer Prod. Liab.*

9

*Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *6 (N.D. Ohio Sept. 23, 2016).[1]

First, to certify a class for settlement, a court must consider whether the proposed class meets the requirements of Rule 23(a) & (b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "The plaintiffs carry the burden to prove that the class certification prerequisites are met . . . and the plaintiffs, as class representatives, were required to establish that they possess the same interest and suffered the same injury as the class members they seek to represent." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013) (citations omitted).

Second, the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," advising class members of the nature of the action, the class definition, and their right to object or exclude themselves from the certified class. Fed. R. Civ. P. 23(e)(2), (5); *see also* Fed. R. Civ. P. 23(c)(2)(B).

And third, after a hearing, this Court must determine that the terms of the settlement are fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). *See also In Re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*, 2016 WL 5338012 at *6 (citing *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 98 (E.D. Pa. 2013) ("a class action cannot be settled without the approval of the court and a determination

---

[1] All unpublished cases collected in alphabetical order as Exhibit 1.

that the proposed settlement is 'fair, reasonable and adequate'")). "Approval of a proposed settlement is committed to the sound discretion of the trial court and the order approving a settlement will not be disturbed absent an abuse of discretion.*" Detroit Police Officers Ass'n v. Young*, 920 F. Supp. 755, 760 (E.D. Mich. 1995) (citing *Bailey v. Great Lakes Canning*, Inc., 908 F.2d 38, 42 (6th Cir. 1990)). The basic test for fairness involves "weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983).

Generally, the standards for certification of a settlement class are less rigorous than in a litigated certification contest. For example, the superiority requirement is relaxed. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems... for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997). Likewise, the predominance requirement is less demanding because "common issues that preexisted the proposed settlement—involving a common product, defendant, and course of conduct—when considered in light of the proposed settlement, predominate over any individual issues between class members." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 347 (N.D. Ohio 2001).

### B. <u>The Settlement is Fair, Reasonable, and Adequate</u>

To evaluate the fairness, reasonableness, and adequacy of a proposed class action settlement, courts within the Sixth Circuit refer to a list of seven factors identified in *UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). *See In re: Whirlpool*, 2016 WL 5338012 at *6. These factors are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *UAW*, 497 F.3d at 631). "The district court may choose to consider only those factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *Sims v. Pfizer, Inc.*, No. 1:10-cv-10743, 2016 WL 772545, at *7 (E.D. Mich. Feb. 24, 2016). In addition, "[a]lthough not included in the seven *UAW* factors, in evaluating the fairness of a settlement [the Sixth Circuit has] also looked to whether the settlement 'gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members.'" *Id.* at 755 (quoting *Williams*, 720 F.2d at 925 n.11). "

### 1. *The risk of fraud or collusion*

Here, there is no evidence to rebut the "presumption that the class representatives and counsel handled their responsibilities with the independent

12

vigor that the adversarial process demands." *In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, 2016 WL 5338012, at \*10 (citing *UAW*, 497 F.3d at 631). The Parties reached the Settlement only after mediating their claims before an experienced mediator and following extensive arm's-length negotiations between counsel for the parties. Class Counsel extensively investigated the applicable law as applied to the relevant facts discovered in this action, and the potential defenses thereto. Those efforts included dozens of interviews with Class Members and the exchange of key documents with Defendant. The Settlement is based on a robust review of the facts and law.

In reaching the proposed Settlement, Class Counsel relied on their substantial litigation experience in similar complex class actions and automotive class action cases, and a thorough analysis of the legal and factual issues presented. Plaintiffs' liability and damages evaluation was premised on a careful and extensive analysis of claims and financial data produced by Defendant. Settlement negotiations were facilitated and supervised by Gene J. Esshaki, an experienced and respected mediator. The proposed Settlement Agreement is the product of careful factual and legal research and arms'-length negotiations between the Parties, and is presumptively fair. *See Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) ("Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.").

13

There is nothing in the course of the negotiations or the substance of the settlement that discloses grounds to doubt its fairness – "[w]here a class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair." *Manual* § 21.662 at 464.

### 2. *The complexity, expense and likely duration of the litigation*

Where, as here, proceeding with litigation would require a substantial amount of time to yield a potential marginal incremental benefit to the Class and result in a large increase in Class Counsel's already-substantial fees and costs, a proposed settlement is fair, reasonable, and adequate. *In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, 2016 WL 5338012, at *10 (noting continued litigation of multi-state class action class action through trial and appeals would be "onerous and overwhelming" and favored settlement because it "avoids a huge consumption of resources of the parties and the Court").

In the instant case, the complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement. Litigating the claims of the Class would require substantial additional preparation, including significant, additional time-consuming and expensive discovery, briefing and arguing contested motions for class certification and summary judgment, formal expert discovery, and, if the case were to proceed to trial, extensive pre-trial briefing, trial preparation, participation in trial, the

14

determination of how to allocate and distribute damages, and, potentially, post-trial briefing and resulting appeals. Conversely, resolving this case by means of the proposed Settlement will yield a prompt, and certain, recovery for the Settlement Class. GM has admitted to the inadvertent misstatement of the EPA estimated mpg of the Class Vehicles and is offering compensation to the Settlement Class using the same formula for EPA estimated fuel costs that was displayed with the Class Vehicles prior to sale. Accordingly, the proposed Settlement will benefit the parties and the court system.

### 3.  The amount of discovery engaged in by the parties

The Parties engaged in confirmatory discovery before agreeing to the Settlement including in-person meetings. Class counsel spoke with hundreds of class members during the course of this litigation. In connection with the mediation, the Parties exchanged documents and data relevant to Plaintiffs' claims. This discovery allowed the Parties to understand the strengths and weaknesses of their claims and defenses, and reach a Settlement that provides relief to affected Settlement Class Members while accounting for the risks of continued litigation. *Compare Id.* at *10 (holding extensive discovery engaged in supported approval of settlement); *with Olden v. Gardner*, 294 F. App'x 210, 218 (6th Cir. 2008) (explaining that the lack of pre-settlement discovery can "weaken[ ] the class counsels' ability to advocate effectively for the plaintiff class during settlement

negotiations and therefore suggests that the settlement was not fair, reasonable, and adequate").

### 4. *The likelihood of success on the merits*

"The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, 2016 WL 5338012, at *11 (citing *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). In evaluating the likely success on the merits, this Court's task is not to "decide whether one side is right or even whether one side has the better of these arguments," because that would "defeat the purpose of a settlement in order to approve a settlement." *UAW*, 497 F.3d at 632. "Rather, it is enough if the evidence shows that: (1) the parties are locked in a real dispute regarding whether [the product at issue] is defective; and (2) the merits of the Class's case are not so overwhelming that continued litigation is a vastly better option than settlement." *In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, 2016 WL 5338012, at *11.

Here, a review of the Agreement reveals the fairness, reasonableness, and adequacy of its terms. Option 1 allows Class Members to receive a check payable in cash in an amount based on the corrected estimated mpg of the Class Vehicles that compensates them for the difference between the incorrect and corrected estimated fuel costs. Option 2 allows Class Members to receive a voucher for a

$2,000 credit toward the purchase of any new GM Vehicle from an authorized GM dealer within 3 years of the Effective Date under the Agreement. This relief easily satisfies the reasonableness standard, especially when considering the difficulty and risks presented by pursuing further litigation.

Specifically, although Class Counsel are confident in the merits of Plaintiffs' claims, the law with regard to Plaintiffs' claims is contested throughout the country and within the Sixth Circuit. Plaintiffs in this case face significant risks if they proceed with litigation, including the looming possibility of a fiercely contested class certification proceeding and trial. This legal uncertainty, the risk of establishing liability in complex class action cases such as this, along with the risks of proving damages, militate strongly in favor of the proposed Settlement. That is, in contrast to the uncertain outcome of litigation, the Settlement Agreement enables members of the Settlement Classes to obtain a certain and immediate financial benefit without incurring the unnecessary risks of proceeding with litigation on contested and uncertain legal issues.

5.  *The opinions of class counsel and class representatives*

The opinions of Plaintiffs' counsel and of the class representatives favor final settlement approval. Plaintiffs' counsel have extensive experience litigating consumer class actions, and Class Counsel support settlement approval. *See* Plaintiffs' Unopposed Motion for Preliminary Approval of the Proposed Class

Action Settlement (ECF No. 34, Exhibits 2 & 3). Class Counsel has spent *hundreds* of hours becoming familiar with the strengths and weaknesses of their claims while litigating this case. Class Counsel has also consulted with each of the class representatives regarding the proposed Settlement, and each class representative has agreed to the Settlement.

"In sum, the Court has no reason to second-guess Class Counsel's conclusion that the settlement reached with the Defendants is fair, reasonable, adequate, and in the best interest of the class." *In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, 2016 WL 5338012, at *11.

### 6.  *The reaction of absent class members*

There has been no opposition to the Settlement. Out of 7,622 Class Members, there have been only 2 requests for exclusion and 0 objections. Additionally, 206 Class members have submitted claim forms to receive the voucher instead of a check. The remaining 7,414 Class members will receive checks in amounts ranging up to $1,500.00. The minimal number of opt-outs and objections is a strong indication of the Settlement Class's satisfaction with the Settlement and favors final approval. *In re Prandin Direct Purchaser Antitrust Litigation*, No. 2:10-cv-12141, 2015 WL 1396473, at *3 (E.D. Mich. Jan. 20, 2015) ("The scarcity of objections-relative to the number of class members overall-indicates broad support for the settlement among Class Members."); *In re*

*Cardizem*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement").

### 7. The public interest

"'[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously "difficult and unpredictable" and settlement conserves judicial resources.'" *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *5 (E.D. Mich. Dec. 12, 2013) (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 530). The Settlement achieved in this case "provides relief for a substantial number of class members, avoids further litigation, and frees the Court's judicial resources." *Id.* As such, the public interest also supports the proposed Settlement.

### C. The Settlement Meets the Requirements of Rule 23

In its Order of July 19, 2017, the Court granted preliminary certification of the Settlement Class. In granting final settlement approval, the Court should also certify the Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class consists of:

> All persons within the United States who purchased or leased a retail new model year 2016 Chevrolet Traverse, Buick Enclave, or GMC Acadia with a "Window Sticker" displaying incorrect EPA-estimated fuel economy and five-year fuel costs from an authorized GM dealer and who have *not* executed a release of any and all

19

claims set forth in the action in favor of GM in accordance with the "Compensation Program" described below and who have not otherwise released their claims against GM set forth in the action, and who do not submit timely requests for exclusion.

Federal Rule of Civil Procedure 23 sets forth the requirements for certifying a proposed class:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The Supreme Court has summarized these four basic requirements as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). In addition to fulfilling the four prerequisites of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b). *See In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *5. Pursuant to Rule 23(b), a class action may be maintained if: (1) there is otherwise a risk of (a) inconsistent adjudications or (b) impairment of interests for non-class members; (2) the defendant's conduct applies generally to the whole class; or (3) questions of law or fact common to members of the class predominate, and the class action is a

superior method for adjudication. *See* FED. R. CIV. P. 23(b)(1)-(3). In addition, pursuant to Rule 23(c)(1)(B), "[a]n order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)."

Generally, the standards for certification of a settlement class are less rigorous than in a litigated certification contest. For example, the superiority requirement is relaxed. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems… for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997). Likewise, the predominance requirement is less demanding because "common issues that preexisted the proposed settlement—involving a common product, defendant, and course of conduct—when considered in light of the proposed settlement, predominate over any individual issues between class members." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 347 (N.D. Ohio 2001).

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Sixth Circuit does not employ a strict numerical test; instead, proof of "substantial numbers" of class members satisfy the numerosity requirement. *Daffin v. Ford Motor Co*., 458 F.3d

549, 552 (6th Cir. 2006)). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 403 (S.D. Ohio May 2007) (citing *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Here, the approximately 7,600 Settlement Class Members easily satisfies the numerosity requirement.

### 2. *Commonality*

Rule 23(a)(2) provides that a class action may be maintained only if "there are questions of law or fact common to the class." Commonality is satisfied if the named plaintiffs show that their claims 'depend upon a common contention' that is "'of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1493, 194 L. Ed. 2d 597 (2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)). Plaintiffs need only identify one common question of law or fact to establish commonality. *Griffin*, 2013 WL 6511860, at *6 (citing *International*, 2006 WL 1984363, at *19).

In this case, there are numerous questions of law and fact that are common to the class, at least for settlement purposes, including but not limited to, whether the GM violated the consumer protection statutes alleged in the First Amended Complaint, whether GM's conduct constitutes actionable fraud, and whether GM was unjustly enriched. Moreover, GM admitted that the EPA mpg estimates were inadvertently overstated by 1-2 mpg depending on the model of the Class Vehicle involved and claimed the overstatement was due to an inadvertent computer error. (Agreement at ¶ II.D.) The Commonality requirement is therefore satisfied here. *Daffin*, 458 F.3d at 552 (finding commonality based on question of whether automobile part was defective and whether warranty covered repairs satisfied commonality); *see also In re Teletronics*, 168 F.R.D. 203, 213 (S.D. Ohio 1996) (holding that there was commonality where the plaintiffs used two "virtually identical" pacemaker models and the issue was whether the defendant's conduct caused metal-fatigue failure).

### 3. Typicality

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23(a)(3). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)

(quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1069, 1082 (6th Cir.1996)). "Like commonality, the typicality requirement is not onerous, and is satisfied if there is a strong similarity of legal theories, 'even if substantial factual distinctions exist between the named and unnamed class members.'" *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 592 (E.D. Mich. 2006).

Plaintiffs' claims undoubtedly are typical of those of absent Class Members, as all Settlement Class Members' claims arise from Defendant's sale of the Class Vehicles. *See Daffin*, 458 F.3d at 553 (finding typicality where the "class members' claims arise from the same practice (delivery of non-conforming vehicle), the same defect (the allegedly defective throttle body assembly), and are based on the same legal theory (breach of express warranty) . . . despite the different factual circumstances regarding the manifestation of the [defect] . . . .").

### 4. Adequacy

The final prerequisite for class certification is adequacy of representation, which requires a showing that "the representative parties will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). The adequacy requirement applies both to Plaintiffs and their counsel. *Taylor v. CSW Transp. Inc.*, 264 F.R.D. 281, 291 (N.D. Ohio 2007) (citation omitted). The Sixth Circuit uses a two-prong test to determine if the class representatives will fairly and adequately protect the interests of the class: "'1) [T]he representative must have

common interests with unnamed class members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Vassale*, 708 F.3d at 757 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)).   Additionally, the court reviews "'the adequacy of class representation to determine whether class counsel are qualified, experienced, and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another.'" *Id.* (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (citation omitted)). "'Only when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate.'" *Id.* (quoting *Gooch v. Life Investors. Ins. Co. of Am.*, 672 F.3d 402, 431 (6th Cir. 2012)).

First, Plaintiffs have no interests that are antagonistic to those of the Class. As purchasers or lessors of Defendant's Class Vehicles who claimed to have suffered losses as a result of Defendant's alleged actions, Lead Plaintiffs' interests are directly aligned with the interests of all Class Members.  Lead Plaintiffs and the absent Class Members have precisely the same interest in proving their claims against Defendant.

Second, Plaintiffs have retained counsel highly experienced in consumer class action litigation to prosecute their claims and the claims of the Class. As this

25

Court previously recognized when appointing The Miller Law Firm, P.C. and McCune Wright Arevalo LLP as Interim Class Counsel, both firms have extensive experience litigating consumer class actions on behalf of injured consumers and have obtained significant recoveries in this area of the law. *See* ECF No. 19.

Thus, Rule 23(a)'s adequacy requirement is satisfied.

### 5. *The requirements of Rule 23(b)(3) are met*

Plaintiffs seek to certify the Settlement Classes under Rule 23(b)(3), which has two components: predominance and superiority. The court need only find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### a. Predominance

Subdivision (b)(3) of Rule 23 parallels subdivision (a)(2) in that "both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re American Medical Systems, Inc.*, 75 F.3d at 1084 (citing 1 Newberg, supra, § 3.10, at 3–56). "Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.*, 722

F.3d 838, 859 (6th Cir. 2013). Instead, "[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001)). Common questions need only predominate; they need not be dispositive of the litigation. Id. (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)).

In *Daffin*, the Sixth Circuit upheld the district court's finding of predominance in an automobile defect class action notwithstanding the existence of potential individualized issues. The court found the predominant issues in the litigation to be "(1) whether the throttle body assembly is defective, (2) whether the defect reduces the value of the car, and (3) whether Ford's express "repair or replace" warranty covers the latent defect at issue in this case." *Daffin*, 458 F.3d at 554. The Sixth Circuit went on to state that "[t]his is a case in which, assuming the throttle body is the same in every car, class members all have the same express warranty claim." *Id.* (citing *Chandler v. Southwest Jeep-Eagle*, 162 F.R.D. 302, 310 (N.D. Ill.1995) (predominance requirement satisfied where all consumers received the same service contract and the principal question was whether the service contract violated consumer protection laws)); *see also Galoski v. Applica*

27

*Consumer Prod.*, 309 F.R.D. 419, 424 (N.D. Ohio 2015) (finding predominance where "[t]he only remaining issue in this case is whether Applica's product, packaged and marketed as a "pest repeller" is, in fact, capable of effectively repelling pests.").

In the instant action, for settlement purposes, several common questions of law and fact predominate over any questions that may affect individual Settlement Class Members such that certification of the proposed Settlement Class is appropriate. For example, were this case to proceed, the litigation would have focused on whether Defendant is liable for admitting it inadvertently misstated the EPA estimated mpg on the Class Vehicles. Those issues are subject to "generalized proof," and are "question[s] . . . common to all class members." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *6 (W.D. Ky. Dec. 22, 2009) (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)) ("the proof required [must focus] on Defendant's conduct, not on the conduct of individual class members."). *See also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 299 (3d Cir. 2011); *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146 (CCC), 2013 WL 1192479, at *6 (D.N.J. Mar. 22, 2013). Accordingly, the predominance requirement is satisfied.

b.  Superiority

The class action also must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). When assessing superiority, the Court considers "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action." *Id.* In the settlement context, however, the latter consideration is not relevant. *See Amchem*, 521 U.S. at 620.

The Settlement Agreement provides members of the Settlement Class with prompt, predictable, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Members who are dissatisfied with the Settlement to object or to exclude themselves. The Settlement also relieves the substantial judicial burdens imposed by repeated adjudication of the same issues in potentially numerous individualized trials against Defendant. Therefore, "class status here is not only the superior means, but probably the only feasible [way] . . . to establish liability and perhaps damages." *Augustin v. Jablonsky*, 461 F.3d 219, 229 (2d Cir. 2006) (quoting *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004)); *see also Daffin*, 458 F.3d at

554 ("Permitting individual owners and lessees of 1999 or 2000 Villagers to litigate their cases is a vastly inferior method of adjudication when compared to determining threshold issues of contract interpretation that apply equally to the whole class.").

In sum, the proposed Settlement Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3), and should be certified.

### D. Interim Lead Counsel Should be Appointed Class Counsel

Plaintiffs also request that this Court appoint The Miller Law Firm, P.C. and McCune Wright Arevalo, LLP as class counsel in accordance with Fed. R. Civ. P. 23(g). That provision states that the court certifying a class must also "appoint class counsel." Class counsel must "fairly and adequately represent the interests of the Class." Fed. R. Civ. P. 23(g)(1)(A), (B). In appointing class counsel, the court must consider:

- the work counsel has done in identifying or investigating potential claims in the action;
- counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
- counsel's knowledge of the applicable law; and
- the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)(iv).

The firms moving for appointment as class counsel have an abundance of complex litigation experience, including numerous successful class actions. *See Firm Resumes* (Dkt. Nos. 34-8 & 34-9). Further, the firms have already undertaken

30

a vigorous prosecution of this action, including conducting an initial investigation of the claims, filing the Complaint, and negotiating settlement, among other things. Through these efforts, undersigned counsel have demonstrated their commitment to this action, and they have invested the resources necessary to litigate the case to a successful conclusion. The firms' ample and notable records in litigating and achieving successful outcomes, and their commitment to this action to date, strongly indicate that these firms will adequately represent the interests of the Class.

Accordingly, under the considerations identified in Rule 23(g)(1), Interim Lead Counsel submit that they have demonstrated they are qualified for appointment as class counsel.

### E. **The Notice Program Satisfied Due Process**

Rule 23(c)(2)(B) requires that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Knuckles v. Elliott*, No. 15-10175, 2016 WL 3912816, at *4 (E.D. Mich. July 20, 2016). The notice must inform class members of the following:

> (i) The nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests

exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* at \*5. In its Preliminary Approval Order, the Court approved the Parties' jointly proposed Notice Plan. Since then, a thorough direct mail notice program, intended to provide the best notice practicable, was implemented. *See* Kopperud Decl.

The Claims Administrator received the Settlement Class data files on August 6, 2017, which contained records of 7,622 unique names and addresses. Kopperud Decl., at ¶ 6. All of the addresses were standardized and updated using the National Change of Address database prior to mailing to ensure that the most recent mailing address was used. *Id.* at ¶ 7. On August 9, 2017, the Claims Administrator mailed by first class mail, the approved Class Notice and Claim Form to the last known addresses of 7,622 individuals. *Id.* at ¶ 8. The Claims Administrator received 100 address updates from the Post Office, which were promptly mailed to the updated addresses. *Id.* at ¶ 9. Approximately 650 notice packets were returned to the Claims Administrator as undeliverable by the Post Office. The Claims Administrator then ran skip traces for these individuals in an attempt to locate them. *Id.* at ¶ 10. The Claims Administrator was able to locate 253 updated addresses, which were re-mailed promptly. *Id.* An additional 21 were re-mailed per Class Member requests. *Id.* at ¶ 11.

Accordingly, the notice campaign satisfied the requirements of Rule 23 and due process.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (i) grant final approval to the proposed settlement; (ii) certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (iii) appoint The Miller Law Firm, P.C. and McCune Wright Arevalo, LLP as class counsel; and (iv) grant such further relief as the Court deems just and proper.

DATED: October 23, 2017                 Respectfully submitted,

BY:   */s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon Almonrode (P33938)
**MILLER LAW FIRM, P.C.**
950 W University Drive, Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com

Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
**MCCUNE WRIGHT AREVALO LLP**
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: (909) 557-1250
jgs@mccunewright.com
mds@mccunewright.com
jbk@mccunewright.com

33

Richard D. McCune
David C. Wright
Elaine S. Kusel
**MCCUNE WRIGHT AREVALO LLP**
3281 E Guasti Road
Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275
rdm@mccunewright.com
dcw@mccunewright.com
esk@mccunewright.com

***Attorneys for Plaintiff and the Putative Class and Proposed Class Counsel***

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| TIFFANY ELLIS, STEPHEN TYSON, GAIL BRALEY, DAVID LYALL, LINDA KEMP, SYLVESTER TIBBITS, LUCAS CRANOR, MARY CRAWFORD, IRENE STAGER, NATASHA FORD, and GARRY WILLET, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) | Case No.: 2:16-cv-11747-CGS-APP **CLASS ACTION** Hon. George Caram Steeh Magistrate Judge Anthony P. Patti |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| General Motors, LLC, | ) ) | |
| Defendant | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 23, 2017 I electronically filed the foregoing with the Clerk of the Court using the ECF system which will notify all counsel of record authorized to receive such filings.

**THE MILLER LAW FIRM, P.C.**

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com